OPINION OF THE COURT
Jones, J.
Patient records maintained by a drug abuse treatment center which is assisted by an agency of the United States are not to be denied the shelter of statutory confidentiality where the center made a diagnosis for drug abuse, notwithstanding that the patient first sought non-drug-related services from the center and that the records sought to be disclosed pertain to other than a drug-related condition.
Incident to his defense in a paternity proceeding pending in Family Court of Kings County, respondent, David S., sought to subpoena records of The Door (a drug and alcohol abuse prevention and treatment facility receiving direct and indirect assistance from the National Institute on Drug Abuse) concerning Guiliana S., the mother on whose behalf the allegation of paternity had been made. The Door has resisted disclosure on the ground that the records are protected by the Federal Drug Abuse Prevention, Treatment and Rehabilitation Act (US Code, tit 21, § 1101 et seq.).[1] Two questions are presented: whether the records demanded are within the coverage of the statute, and if so, whether the direction for their disclosure by the Family *591 Court represents a proper exercise of the power conferred on courts of competent jurisdiction to make exceptions to the statutory proscription (US Code, tit 21, § 1175, subd [b], par [2], cl [C]). We conclude that the records do come within the coverage of the statute and that their disclosure was not authorized.
The paternity proceeding in which this controversy arises was commenced by the New York City Commissioner of Social Services as assignee of Guiliana. When the alleged father, David, served a subpoena duces tecum on The Door for its production of the “[mjedical record, pertaining to examinations, consultations, treatment, birth control, abortion, etc.” of Guiliana, and The Door indicated its unwillingness to comply, David moved in Family Court for an order directing compliance. His purpose was to use the records to impeach Guiliana’s credibility in the paternity proceeding by showing a prior pregnancy and abortion and sexual promiscuity which he expected those records would confirm.
The motion was initially denied but, after hearing the mother’s testimony, Family Court reconsidered its decision and ordered The Door to produce the records for an in camera inspection the following day. After that inspection, Family Court held that the records came within the scope of the statute but, finding that good cause existed, directed that portions of the records be made available to David’s counsel. On appeal taken by The Door, the Appellate Division unanimously affirmed (83 AD2d 636). It concluded, however, that title 21 (§ 1175, subd [a]) of the United States Code was inapplicable because a review of the portion of the records that had been ordered to be disclosed revealed that Guiliana had contacted and continued to deal with the center “for purposes wholly unrelated to drug abuse counselling”. It had no occasion to consider whether, had the records come within the embrace of the statute, their disclosure should be authorized in the circumstances of this case.
We disagree with the Appellate Division’s conclusion that the Federal statutory provision addressed to protection of confidentiality is not applicable because Guiliana *592 first came to The Door for one of its services other than drug counseling. The center attempts to respond to a variety of needs to which young people are exposed and thereby to gain their confidence and, it is hoped, their acceptance of drug and alcohol abuse counseling and treatment where appropriate. In Guiliana’s case, although her initial visit was for pregnancy evaluation and she continued to receive pregnancy counseling during the period to which the records ordered disclosed relate, the center thereafter expanded its assistance to her, providing diagnostic service with respect to drug abuse.[2] By reason of such diagnostic service, Guiliana was a “patient” within the meaning of subdivision (a) of section 1175 as that term is defined by regulations adopted pursuant to authorization provided by subdivision (g)[3] of the statute. Section 2.11 of the departmental regulations provides that “[t]he term ‘patient’ means any individual (whether referred to as a patient, client, or otherwise) who has applied for or been given diagnosis or treatment for drug abuse or alcohol abuse” (42 CFR 2.11 [i]). “Diagnosis” and “treatment” are defined broadly in subdivision (e) of the same regulation: “The terms ‘diagnosis’ and ‘treatment’ include interviewing, counselling, and any other services or activities carried on for the purpose of or as an incident to diagnosis, treatment, or rehabilitation with respect to drug abuse”.
The alleged father asserts however that the protection of confidentiality afforded by the statute does not extend to records maintained by The Door with respect to any pregnancy or abortion of Guiliana but is limited only to those pertaining to drug abuse diagnosis or treatment.
*593 Such a narrow interpretation of the statute is not mandated by its language, is at variance with the expectations of “the strictest adherence” to the confidentiality provision of the statute expressed in the Congressional Conference Report issued in connection with the Federal legislation,[4] and, in the case of centers like The Door which gain access to drug and alcohol abusers by offering a gamut of services, would be counterproductive to the accomplishment of drug and alcohol abuse diagnosis, treatment and rehabilitation. Records entitled to the protection of confidentiality under subdivision (a) of section 1175 are those which are “maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States”; protection is not restricted to records of diagnosis and treatment for drug abuse. In the circumstances here presented we have no difficulty in concluding that the operation of The Door is a “drug abuse prevention function” within the language of the statute and that the records it kept with respect to this patient’s diagnosis, prognosis and treatment, whether for a drug-related condition or otherwise, are records “maintained in connection with the performance of” its drug abuse prevention function. A narrower interpretation of the statutory confidentiality protection would deter not only those, like Guiliana, who initially come for other services (as to which they may also desire confidentiality) and thereafter become drug abuse patients, but also youths whose only interest is in obtaining assistance with drug problems but who, not perceiving the line between what is and is not protected, will forego any aid rather than risk exposure. Broad interpretation furthers the objectives of the Federal statute addressing drug and alcohol abuse prevention, treatment and rehabilitation by not chilling the willingness or discouraging the readiness of individuals to come to facilities *594 operated under the statute. Moreover, a comprehensively inclusive interpretation of subdivision (a) of section 1175 is invited by the addition of subdivision (b) providing, inter alia, for court ordered exceptions where “good cause” is shown.
Concluding that the records sought by this putative father are within the protection of subdivision (a), we turn then to whether there is present in this case “good cause” sufficient to allow their disclosure to be directed by court order pursuant to subdivision (b) (par [2], cl [C]). An examination not only of the statement of factors which the statute requires be considered in assessing good cause but also of the relevant departmental regulation satisfies us that there is no good cause in this instance.
In addition to repeating the statutory injunction that “the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services”[5] the regulation includes a further guideline: “If there is evidence that disclosure would have an adverse effect upon successful treatment or rehabilitation of the patient or would impair the effectiveness of the program, or other programs similarly situated, in the treatment or rehabilitation of other patients, the application should be denied unless the court finds that the adverse effects are outweighed by other factors” (42 CFR 2.64 [f]). It is evident that it is a matter of high priority and prime concern that the effectiveness of drug abuse treatment programs offered by facilities receiving Federal support not be jeopardized by court-ordered disclosure of information gained about those who submit themselves to such facilities. With that principle in mind, weighing the factors set out in the statute, we can reach no conclusion but that, as a matter of law, an order could not properly be granted directing the disclosure sought in the present case.
Considering first the items on the one side of the statutory scale — the public interest and the need for disclosure — it may be recognized that in general there is a broad public interest in assuring the availability of all material *595 and competent evidence for the proper resolution of litigated matters. This consideration, however, would be pertinent to every application for an exception and thus cannot be permitted to weigh heavily in the determination of “good cause” in individual cases. No other public interest in disclosure is identified. As to the “need for disclosure”, here that need is simply the desire of the putative father in private litigation for evidence in a particular form which he deems advantageous to him for use in attacking the credibility of the mother’s testimony. The evidence he hopes to obtain, while perhaps of greater probative worth to the extent that it may be perceived as coming from the lips of the mother herself, is nevertheless by his own admission cumulative only. As the father concedes, other proof is already available in the form of a witness who testified at the Family Court proceeding as to an abortion performed on Guiliana and of testimony given and letters written by Guiliana with respect to her relationships with other men. That being so, little weight is to be attached to the putative father’s “need for disclosure”, particularly in view of a provision in the implementing regulations that “[i]f other competent evidence or sources of information are available, the court should ordinarily deny the application” (42 CFR 2.64 [e]).
j On the other side of the scale are to be accounted “the injury to the patient, to the physician-patient relationship, and to the treatment services”. “[Ijnjury to the patient” and “to the treatment services” must be read in context. It is not alone that the information disclosed may be injurious, it is also that the disclosure may be injurious — either to the patient or to her relationship with the center. Thus, in this case, if evidence obtained from the center were put in David’s hands to be turned against Guiliana in his defense of the proceeding, disappointment of her expectations of confidentiality might lead her to leave the center.[6] *596 To encourage the understandably hesitant to come to drug abuse treatment centers in the first place and thereafter to continue to avail themselves of these services — and thus to advance the public interest as well — the statute protects patients against disclosures the threat of which might well deter their participation. Moreover, there are prospects of injuries to Guiliana: the injury to her personal dignity which may follow from making her medical and pregnancy records, normally thought to be confidential, available for public exposure, and injury in the form of loss of services provided to her by The Door if, as a consequence of the breach of the confidentiality which she was led to expect,[7] she should elect to separate herself from the facility. While in this instance no independent injury to the physician-patient relationship can be identified, as has already been suggested injury to the treatment services may very well result, both as to Guiliana herself and as to other actual and potential patients not only of this but other facilities who, informed of other disclosures, may be dissuaded by fear that confidentiality will not be available to them at such facilities and that the assurances given them are not to be relied on.
In sum we conclude that no arguments of merit are advanced in support of disclosure and that substantial considerations of the legitimate interests of both Guiliana and The Door, as well as other treatment centers, dictate as a matter of law that confidentiality of the records be preserved. That being so, the court order for disclosure under section 1175 (subd [b], par [2], cl [C]) was improperly granted.
For the reasons stated, the order of the Appellate Division should be reversed and the motion to compel compliance denied, with costs.

. The portions of the Federal statute relevant to the present appeal are the following:
“§ 1175. Confidentiality of patient records — Disclosure authorization
“(a) Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.
“(b) ** * *
“(2) Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives his written consent, the content of such record may be disclosed as follows:
* * *
“(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services.”

. This statement is predicated on our in camera examination of Guiliana’s records at The Door.

. Subdivision (g) of section 1175 provides: “(g) Except as provided in subsection (h) of this section, the Secretary of Health and Human Services, after consultation with the Administrator of Veterans’ Affairs and the heads of other Federal departments and agencies substantially affected thereby, shall prescribe regulations to carry out the purposes of this section. These regulations may contain such definitions, and may provide for such safeguards and procedures, including procedures and criteria for the issuance and scope of orders under subsection (b)(2)(C) of this section, as in the judgment of the Secretary are necessary or proper to effectuate the purposes of this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.”

. “The conferees wish to stress their conviction that the strictest adherence to the provisions of this section is absolutely essential to the success of all drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy will be protected. Without that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome.” (HR Rep No. 92-920, 92d Cong, 2d Sess, p 33 [in US Code Cong & Admin News, 1972, p 2072].)

. (US Code, tit 21, § 1175, subd [b], par [2], cl [C], n 1, supra; 42 CFR 2.64 [d].)

. While it may appear uneven on its face to express concern for the interest of Guiliana in the paternity proceeding while declining to credit a similar concern for the putative father’s interest, this is consistent with the express statutory mandate that injury to the patient be considered in the balancing of factors; the statute contains no counterpart reference to the interests of the applicant in disclosure.
*596 The successful assertion of any of the several other privileges of confidentiality often results in the exclusion of relevant and probative proof which it is to the practical advantage of the beneficiary of the privilege to keep out of evidence. There, as here, the policy encouraging the beneficiary (whether penitent, client or patient) to make the original communication without fear of subsequent disclosure outweighs the general interest of society, and of an opposing litigant in particular, in the availability of relevant and material evidence.

. The consent form furnished by The Door and executed by Guiliana at the inception of her relationship with the center contained the following statement: “I understand that all information will be kept confidential.”