OPINION OF THE COURT
Mara T. Thorpe, J.
In this neglect proceeding, initiated pursuant to article 10 of the Family Court Act, the Beth Israel Medical Center (Medical Center) moves to quash a subpoena, served upon it by the petitioner herein, for “all records of [its] contact with either or both respondents” in this proceeding. The Medical Center argues that in the absence of a court order issued for good cause shown, disclosure of its records is prohibited under section 1175 of title 21 of the United States Code and the regulations promulgated thereunder.
*656 Title 21 (§ 1175, subd [a]) of the United States Code provides in relevant part that: “Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall * * * be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.” Section 1175 (subd [b], par .[2], cl [C]) provides that the records may be disclosed “[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor.” The section further provides that “[i]n assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services.” (US Code, tit 21, § 1175, subd [b], par [2], cl [C]).
In Commissioner of Social Servs. of City of N. Y. v David R. S., 55 NY2d 588), the Court of Appeals identified the injury to the patient’s treatment services resulting from disclosure of such records as the deterrence of the patient in question, as well as of other present and potential patients, from participation in treatment services due to fear, prompted by knowledge of record disclosures, that confidentiality will not be available to them at those treatment facilities and that the assurances given them are not to be relied upon. While there is no evidence in this case that respondents are currently in a drug treatment program and thus it does not appear that disclosure would harm a physician-patient relationship or result in respondents’ termination of treatment services, the impact on other present patients as well as all potential future patients must be given substantial weight. (See Commissioner of Social Servs. of City of N. Y. v David R. S., supra; Congressional Conference Report, HR Report No. 92-920, 92d Cong, 2d Session, p 33 [in US Code Cong & Admin News, 1972, p 2072].)*
*657 On the other side of the scale is the public interest in protecting children from injury or mistreatment and in safeguarding their physical, mental and emotional well-being. This interest is reflected in such New York State legislative determinations as those embodied in section 1011 of the Family Court Act setting forth the purpose of child protective proceedings, section 1038 of the Family Court Act requiring hospitals and other agencies to supply to the court records in their custody relating to abuse or neglect for use in article 10 proceedings, and section 1046 (subd [a], par [vii]) barring application of the physician-patient and related privileges in child protective proceedings.
Prior courts which have been called upon to apply the Federal statute in child protective proceedings have held that where the information is material and its disclosure is necessary to establish an allegation of neglect or abuse, the public interest in protecting children from mistreatment and in safeguarding their well-being outweighs the interest in protecting from injury the patient, the physician-patient relationship and the treatment services. (Matter of Doe Children, 93 Misc 2d 479; Matter of Baby X., 97 Mich App 111; cf. Matter of Dwayne G., 97 Misc 2d 333 [applying a virtually identical Federal statute which protects the confidentiality of alcohol abuse records].)
This court agrees with that conclusion. However, in view of the high priority assigned to the maintenance of the confidentiality of drug treatment program records it is incumbent upon the court to scrutinize the extent of petitioner’s need for the records.
Of the. four allegations of neglect in the instant petition, the one to which the records in issue would be most relevant is that “[t]he mother is unable to adequately care for the child due to her misuse of drugs.” Petitioner argues on this motion that proof that the respondents are or were in a methadone program “will help” in proving they are or were drug addicts. Since there is no allegation in the petition that the child is neglected due to the father’s drug *658 use, the motion to quash the subpoena is granted insofar as it pertains to any records of his which may exist. Review of the evidence adduced at trial thus far and an in camera inspection of the period of time covered by the records in issue also leads the court to conclude that the need for the records of the respondent mother demonstrated to date is not sufficient to establish good cause for their release.
The records in issue do not cover any period of time subsequent to the birth of the child who is the subject of this proceeding, and there is testimony by the child’s paternal grandmother that the respondent mother once admitted to her that she was in a methadone program. Further, there is evidence that the respondent mother admitted to the child care agency caseworker that she was mainlining by the age of 18 and there is a finding by a Family Court Judge at a foster care review proceeding on October 2, 1981, concerning a sibling of the child in this proceeding that there was evidence of drug addiction by the respondent mother. Additionally* a social worker at Mary Immaculate Hospital testified without objection that the respondent father told her that the mother had been on drugs and in many drug rehabilitation programs.
Thus, it is evident that the records in question, even if they were to show that the mother had been in a methadone treatment program for drug addiction at the Medical Center, would be merely cumulative. Where drug treatment program records would be cumulative only, it has been held that they will not be ordered disclosed. (Commissioner of Social Servs. of City of N. Y. v David R. S., 55 NY2d 588, supra.) This is true, where they are sought for the purpose of impeaching a witness’ credibility and the fact of drug use has already been disclosed (United States v Graham, 548 F2d 1302) and where such records would be more probative than the evidence of the same facts already adduced (Commissioner of Social Servs. of City of N. Y. v David R. S., supra). Therefore, since the records would not be probative of drug use subsequent to the birth of the child and would be merely cumulative on the issue of drug use prior to the child’s birth, the court will not order them produced for use in establishing the allegation of drug misuse.
*659 However, since one of the allegations in the petition is that the child was diagnosed as “failure to thrive” and the doctor who made that diagnosis has not yet testified, the court will reserve decision on whether to grant the motion to quash the subpoena in its entirety until it ascertains from the doctor whether the records would be relevant to the cause of the failure to thrive. Accordingly, the Medical Center shall have the records available at trial on October 14, 1982, for an in camera inspection if necessary and on such further trial dates as the court may direct until final disposition of the motion to quash.

 The Congressional Conference Report, issued in connection with the Federal legislation states: “The conferees wish to stress their conviction that the strictest adherence to the provisions of this section is absolutely essential to the success of all *657 drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy will be protected. Without that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome.”