Argued and submitted May 10, affirmed December 15, 1999

## In the Matter of
## Chelsea West, a Minor Child.
## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

## Dion WEST,
*Appellant.*

## (9707-82066; CA A100350)

993 P2d 152

Daniel A. Cross argued the cause for appellant. With him on the brief was Bertoni & Todd.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

■     Father appeals a juvenile court order, made in the course of a child dependency proceeding, authorizing disclosure of his drug evaluation and treatment records from two medical facilities. ORS 419A.200. The issue presented is whether the state's need for the records satisfies the "good cause" standard for their release under 42 USC section 290dd-2 (1994). Our resolution of that issue turns on the meaning and scope of the federal statute and how it applies to this particular case. We review, therefore, for legal correctness.[1] We conclude that the state's reasons for seeking disclosure of the records fall within the scope of what a court properly may consider as "good cause" and, further, that the records were not purely cumulative. We therefore affirm.

The material facts are undisputed. Police found father, who was behaving in a delusional manner, walking around the streets of Portland with his three-year-old daughter. The officers took father to Providence Medical Center because they suspected that he might have mental health or substance abuse problems. Staff at the triage center examined him and concluded that he was actively psychotic, possibly due to drugs. The staff notified the State Office for Services to Children and Families (SOSCF) of child's circumstances, and the agency placed child in protective custody.

Within days, following a series of shelter hearings and the filing of a jurisdictional petition, the juvenile court found probable jurisdiction over child and committed child to SOSCF for shelter care placement. Meanwhile, father had been transferred to Emanuel Hospital for further evaluation and treatment. Subsequently, he was released. About one month after the incident that precipitated taking child into protective custody, the state subpoenaed father's treatment

---

[1] Father takes the position that our review is *de novo* because this is a juvenile proceeding. *De novo* review, however, describes our standard of review for factual issues. *See generally Trabosh v. Washington County*, 140 Or App 159, 163 n 6, 915 P2d 1011 (1996) (explaining appropriate meaning and use of the term *"de novo"* review). A legal issue is a legal issue, to be reviewed as such, even if it arises in the context of a case in which our factual review is *de novo*. Here, the issue turns on the meaning of a federal statute. We therefore decide the statute's meaning without deference to how the trial court determined that legal question, notwithstanding that review of factual issues in juvenile cases is *de novo*.

records from Providence and Emanuel. Father, through his attorney, objected to disclosure of the records on the ground that they contained confidential information and were protected by federal law. At one of the initial pretrial conferences, the parties argued their respective positions, but the juvenile court declined to resolve the issue at that time.

At a pretrial proceeding held about three months after child was first taken into custody, father admitted that he has "mental health issues" and "substance abuse problems" that interfere with his ability to care for and parent child, as alleged in the petition. Based on those admissions, the juvenile court referee found jurisdiction, committed child to SOSCF's legal custody, and ordered father to complete drug and alcohol evaluation and treatment and to undergo a psychological evaluation. The state asked the court to resolve its request for an order directing disclosure of father's medical records so that it could pursue its subpoena.[2] Father again objected. The referee ordered release of the records but stayed their release pending rehearing before a juvenile court judge.

At rehearing, father argued that there was no "good cause" for disclosure of the records because he had admitted jurisdiction and the state therefore had no "evidentiary need" for the records. Father also argued that the records would be merely cumulative, because the court had ordered father to undergo substance abuse and psychological evaluations, which would be available to the state and would provide information about father's mental state and substance abuse problems.[3] In response, the state contended that the independent observations of treatment providers at the time of the precipitating crisis would be uniquely valuable in understanding the exact nature of father's problems so that the

---

[2] The process for disclosure of medical records under the federal statute involves two steps. As the implementing regulations observe, a court order of disclosure pursuant to the statute "is a unique kind of court order. Its only purpose is to authorize a disclosure or use of patient information * * *. Such an order does not compel disclosure. A subpoena or a similar legal mandate must be issued" for that purpose. 42 CFR § 2.61 (1998).

[3] Father also asserted that the records were subject to the physician-patient privilege under state law. The state, however, argued that ORS 419B.040 abrogates the physician-patient privilege in this circumstance. On appeal, father has abandoned his reliance on state law.

agency could ensure appropriate treatment and planning for the possible return of child to father's custody. The juvenile court agreed with the state and therefore affirmed the referee's decision ordering disclosure. In deciding that the state's need for the records outweighed father's interests in keeping them confidential, the juvenile court specifically relied on the fact that the requested records were made contemporaneously with "the crisis that instituted this petition being filed in the first place" and that the state was not seeking "the entire psychiatric record of this man or [records from throughout] his whole life." On appeal, the parties renew the arguments they made below.

We begin by examining 42 USC section 290dd-2 (1994) and its restriction on the disclosure of certain drug treatment records. Congress enacted protection for those records in recognition that fear of public disclosure of drug abuse problems could serve as a disincentive for people to seek and obtain needed treatment.[4] To that end, the federal statute provides for a general rule of confidentiality that attaches to records pertaining to substance abuse treatment, programs, and research. 42 USC § 290dd-2(a) (1994).[5] The statute also provides, however, for disclosure of the records in limited circumstances. See 42 USC § 290dd-2(b) (1994). Relevant here is the authorization for release of such records upon a judicial determination that there is "good cause" for disclosure. Specifically, the federal statute provides for disclosure, notwithstanding a patient's lack of consent:

> "If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial

---

[4] *See generally* HR Conf Rep No 92-920, 92nd Cong, 2d Sess, *reprinted in* 1972 US Code Cong & Ad New, 2072 (discussing purpose behind former version of statute).

[5] 42 USC § 290dd-2(a) (1994) provides:

> "Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section."

risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure."

42 USC § 290dd-2(b)(2)(C) (1994).

The statute outlines essentially three aspects to the court's good cause inquiry. First, by its reference to good cause "including the need to avert a substantial risk of death or serious bodily harm," the statute requires that a need relating to the prevention of personal harm be of considerable gravity. Second, once such a need is identified, the court must weigh the interests favoring disclosure against those favoring confidentiality and must determine, on balance, which are greater. Finally, if the court orders disclosure, the court must impose safeguards, as appropriate, to ensure that disclosure does not occur beyond what the court has authorized.[6]

■ ■ Father's first contention is that, in determining if there is "good cause" for disclosure under the federal statute, a court may consider only a party's need for the records as evidence in the proceeding pending before the court. Father therefore maintains that because he admitted the allegations of the jurisdictional petition, the state no longer needed the records "as evidence" to ensure protective custody of the child, and, consequently, disclosure was not authorized. Father asserts that the state's need for the records, insofar as it relates to providing services to child and to father, is legally insufficient under the federal statute.

Father points to nothing in the statute's text that expresses such a limitation. Nor is there any such limitation. To the contrary, the statute is worded broadly and generally. It provides for disclosure of an otherwise protected record when disclosure will help avert risk of serious personal harm. It does so without qualification or limitation and without any

---

[6] Regulations also address the effects, procedures, criteria, and contents of judicial disclosure orders. *See generally* 42 CFR §§ 2.61-2.67 (1998). None of those regulations is pertinent to the issue in this case.

suggestion that the records must be sought to provide evidence in a case in which a party seeking disclosure seeks to avert serious harm.[7]

Protecting a child from neglect and endangerment readily meets the level of gravity that the statute suggests is necessary to provide "good cause." Nevertheless, father's point may also be that disclosure in this particular case would not serve a protective purpose because that purpose has been accomplished by establishing jurisdiction over the child. If that is father's point, then we disagree. The jurisdictional phase of a dependency proceeding marks the beginning, not the end, of the court's and SOSCF's protective role. As the state correctly points out, once jurisdiction is established, the juvenile court is charged with determining whether to order father to participate in treatment "to correct the circumstances that brought the child within the jurisdiction of the court." ORS 419B.387. Periodically, SOSCF and the court must review the case and determine whether child should be returned to father's care. ORS 419B.476(2)(a). As needed, the court also is authorized to inquire into "the adequacy of and compliance with the case plan and case progress report." ORS 419B.476(5). Father's admission of the bare allegations of the jurisdictional petition—namely, his admission that he has "mental health issues" and "substance abuse problems"—hardly suffices to permit the juvenile court and SOSCF to carry out their protective role in a meaningful way. Actual assessments of father's problems by medical and mental health professionals are critical to their ability to do so.

■ Father also raises a related, but different, argument. He asserts that the information contained in the records would be purely cumulative given that father has admitted substance abuse and mental illness problems and has agreed to undergo evaluations for those problems. That argument does not bear on what can qualify as good cause under the federal statute but instead goes to the weight of the state's interest in disclosure as balanced against father's interests in

---

[7] Worth noting in that regard is that the federal regulations implementing the "good cause" exception specifically contemplate that otherwise protected records might be sought in circumstances that do not necessarily involve pending litigation, such as a need for records to pursue an investigation. *See generally* 42 CFR § 2.63 *et seq.* (1998).

keeping the records confidential. *See Com'r of Social Ser., Etc. v. David R.S.*, 55 NY2d 588, 436 NE2d 451, 455, 451 NYS2d 1 (1982) (finding that little weight attached to the "need for disclosure" when the evidence was cumulative because other proof on the disputed issue was available); *Matter of Stephen F.*, 118 Misc 2d 655, 460 NYS2d 856, 859 (Fam Ct 1982) ("good cause" was defeated where records were only cumulative of the mother's drug use before the child's birth).[8]

The juvenile court rejected father's argument because it concluded that the records are not cumulative. We agree. To be sure, as father emphasizes, he has admitted the allegations of the jurisdictional petition, and he thus has admitted that he has substance abuse and mental illness problems that endanger his child's welfare. Also, father is correct that the juvenile court's order requires him to undergo future psychological assessments and drug and alcohol evaluations. But father's argument overlooks that the records in question concern medical assessments of father's condition at and near a critical time—namely, when he had become delusional and child had to be placed in protective custody because of the danger father posed to child's welfare. Father's admissions of substance abuse and mental illness problems, in and of themselves, provide no particular information about his condition or conditions and no basis to plan prospectively for child's welfare and return to father. Likewise, although later evaluations undoubtedly will aid in assessing father's problems and needs, they cannot duplicate the particular insights into the history, severity, or etiology of father's "problems" that records made contemporaneously with his delusional crisis may provide. The records in

---

[8] We find little guidance, either in the statute itself or in cases from other jurisdictions, as to the appropriate standard of review in assessing whether the court properly weighed the interests involved and properly determined which interests prevail. In this particular case, however, the specific argument that father makes invites a legal inquiry—*i.e.*, whether *any* weight can be given to an asserted need for records when the same information is available through other records or sources. Apart from making that argument, father does not urge that the juvenile court erroneously assessed the overall balance of the interests involved, an issue that at least arguably might implicate review for abuse of discretion only.

question are uniquely valuable in that regard, as the juvenile court concluded.[9]

In sum, we hold that the federal statute's "good cause" requirement is not limited in this setting to use of the records as evidence to establish protective custody over child. Rather, "good cause" legally can consist of the state's need to assess father's substance abuse and mental illness problems for purposes of providing appropriate services to father and returning child to his custody under circumstances that do not seriously endanger child's health and well-being. We also conclude that, in this case, the particular records sought were uniquely valuable to the state for understanding father's problems and that they were not merely cumulative of what future court-ordered evaluations might show.

Affirmed.

---

[9] Neither party requested an *in camera* review of the records by the juvenile court, apparently because the parties were in agreement about the general nature of their contents as revealed by the timing of when the records were created. We note, however, that our resolution of this appeal does not foreclose further consideration by the juvenile court of the precise contents of the records and appropriate restrictions on disclosure given those precise contents. Pursuant to 42 USC section 290dd-2(b)(2)(C) (1994), a court ordering disclosure may impose appropriate safeguards to ensure that the circumstances and extent of disclosure are tailored to the interests at stake. Thus, the juvenile court remains in a position in this case to tailor its order as the circumstances may require.