**PORT WASHINGTON TEACHERS' ASSOCIATION, American Federation of Teachers, Local 2938, Nysut, AFL–CIO, Mary. Anne Cariello, as President of the Port Washington Teachers' Association, and Michelle Weiden, on behalf of themselves and the female students of the Port Washington Union Free School, Plaintiffs,**

v.

**BOARD OF EDUCATION OF THE PORT WASHINGTON UNION FREE SCHOOL DISTRICT; Laura Mogul, Nancy V. Cowles, Mark Marcellus, Dean Nardone, Dr. Roy Nelson, Robert Seiden, and David Strom, as members of the Board of Education of the Port Washington Union Free School District and in their individual capacities; and Dr. Geoffrey N. Gordon, as Superintendent of the Port Washington Union Free School District and in his individual capacity, Defendants.**

No. 04–CV–1357 TCP MJW.

United States District Court,
E.D. New York.

March 22, 2005.

Sherry B. Bokser, James R. Sandner, New York, NY, for Plaintiffs.

Florence T. Frazer, James H. Pyun, Kevin G. McMorrow, Ehrlich, Frazer & Feldman, Garden City, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This action was brought by the Port Washington Teachers' Association ("PWTA"); the American Federation of Teachers ("AFT"); Local 2938; the New York State United Teachers ("NYSUT"); the American Federation of Labor–Congress of Industrial Organizations ("AFL–CIO"), Mary Anne Cariello, President of the Teachers' Association ("Cariello"); and Michele Weiden ("Weiden"), (collectively "Union" or "Plaintiffs"), on behalf of themselves and the female students of the Port Washington Union Free School District against the Board of Education of the Port Washington Union Free School District; Laura Mogul; Nancy V. Cowles; Mark Marcellus; Dean Nardon; Dr. Roy Nelson; Robert Seiden; and David Strom, (collectively "Board of Education Members"); and Dr. Geoffrey N. Gordon ("Superintendent" or "Gordon"), (collectively "School District" or "Defendants"), seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure arising from the School District's alleged violation of constitutional, statutory and privilege norms in the implementation of its pregnancy notification policy.

Plaintiffs move this Court to enjoin the continued implementation of the School District's policy mandating parental notification of a student's pregnancy.

For the following reasons, the motion for preliminary injunction is **DENIED**.

## BACKGROUND

On November 12, 2002, Dr. Geoffrey N. Gordon, the District's Superintendent of Schools, issued a staff memorandum which set forth guidance regarding the "right and responsibility" of District staff, including school nurses, to inform a student's parents that she is pregnant ("Policy"). (Pl.'s Ex. A) The memo reminds District staff that a student's disclosure of her pregnancy to any staff member is "not a communication protected by legal privilege," and that in fact, such a disclosure may trigger legal reporting obligations. (*Id.*) The Policy requires that staff members who become aware of a student's pregnancy "should immediately" report it to a school social worker. (*Id.*) The social worker should "encourage" the student to voluntarily disclose her pregnancy to her parents, and if the student represents that she will inform her parents, confirm that such a disclosure was made. (*Id.*) If the student "refuses" to voluntarily inform her parents, the social worker should offer to meet with the parents and the student to help the student inform her parents and/or offer to inform the student's parents without the student being present. (*Id.*) If the student "continues to insist" on keeping the information from her parents, the social worker should inform the student that she/he will inform the parents. (*Id.*) "After consultation with the Principal and Su-

perintendent, the social worker should inform the parents." (*Id.*)

On March 1, 2004, Plaintiffs filed a complaint in this Court, alleging that the District's Policy violated third-party students' constitutional rights to due process, privacy, equal protection; and that it violated of Title IX, New York Public Health Law § 2504(3), and New York Civil Practice and Rules §§ 4507 and 4508(a). On September 5, 2004, the Plaintiffs filed a motion for preliminary injunction. On that same day, the New York Civil Liberties Union Foundation ("NYCLU"), along with the American Academy of Pediatrics ("AAP"), Association of Reproductive Health Professions ("ARHP"), the New York State Association of School Nurses ("NY-SASN"), New York State Nurses Association ("NYSNA"), New York State Society for Clinical Social Work ("NYSSCSW"), and the Society for Adolescent Medicine ("SAM"), (collectively "Amici"), sought leave from this Court to file a brief of *amici curiae* on behalf of the Plaintiffs. On November 8th and 9th of 2004, the Court held a two-day evidentiary hearing on the preliminary injunction motion. The Court granted Amici leave to file their brief at the preliminary injunction hearing. Also at the hearing, this Court denied the Plaintiffs request for a temporary restraining order, finding that there was no irreparable harm or "imminent danger" to the continued implementation of the Policy, but reserved decision on the motion for preliminary injunction.

## DISCUSSION

### I. Standard for Preliminary Injunction

■ Generally where, as here, a Plaintiff seeks to stay governmental action that purports to have been taken in the public interest "pursuant to a statutory or regulatory scheme," he must show (i) a likelihood of success on the merits *and* irreparable harm in the absence of the issuance of an injunction. *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir.2000) (emphasis supplied).[1] As a threshold matter, however, the Plaintiffs must be able to show that they have presented a justiciable case or controversy. Since they cannot do this, their motion for a preliminary injunction is DENIED.

### II. Case or Controversy

Article III of the U.S. Constitution requires that the matter have crystalized into a live case or controversy before the Court may weigh the merits of the action. In this case, the bedrock requirements of ripeness and standing are lacking and thus the Court lacks subject matter jurisdiction over the case. Standing requires that the litigant have a practical interest in the outcome and not merely be interested in setting a legal precedent. *Kowalski v. Tesmer*, —— U.S. ——, ——, 125 S.Ct. 564, 567, 160 L.Ed.2d 519 (2004). Ripeness refers to whether the harm for which a

---

1. Defendants argue that the requested injunction is mandatory rather than prohibitory and thus Plaintiffs must satisfy the higher burden of showing a "clear" or "substantial" showing of a likelihood of success. (Defs.'s Pre-Hr'g Br. at 5–6). An injunction is mandatory, rather than prohibitory, if it seeks to alter, rather than maintain, the status quo or the injunction will provide movant with substantially all relief sought and that relief cannot be undone even if defendant prevails at trial on the merits. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995). In essence, mandatory injunctions seek to impose affirmative action on the Defendants while a prohibitory injunction merely orders that the Defendants refrain from acting. Many Courts have noted that this may be a distinction without a difference. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985) (such distinctions are "more semantic[ ] than substantive"). Nevertheless, here, in seeking to preliminarily enjoin the School District from continuing to implement its Policy, the Plaintiffs are seeking a prohibitory injunction and thus only the lower standards need be satisfied.

remedy is sought has matured sufficiently to warrant judicial intervention. *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

## A. Standing

■■■ As a preliminary matter, the Plaintiffs do not have standing in this case. "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir.2000) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)) (citation and internal quotation marks omitted). In a case, such as this one, where the Plaintiffs purport to bring suit on behalf of a third party, the Plaintiffs must still establish the threshold requirement that they have suffered an "injury-in-fact" before asserting the third party's interest. *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Accordingly, third party standing may be granted if it is shown that (i) the litigant has suffered an injury-in-fact such that the litigant has a "sufficiently concrete interest" in the outcome, (ii) the enjoyment of the right is inextricably bound up with the activity that the litigant wishes to pursue, (iii) the litigant would be as effective a proponent of the right as the third party, and (iv) the third party is unable to assert her own right because there is some "genuine obstacle to such assertion." *Id.* at 112–116, 96 S.Ct. 2868. These limitations on third party standing represent a "healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed, the courts might be called upon to decide abstract questions of wide public significance." *Kowalski*, 125 S.Ct. at 568.

■■■ Though there can be little disagreement in this case that the third-party students face a "genuine obstacle" to the assertion of their own right to privacy,[2] the Plaintiffs fail the standing test according to the first prong of *Singleton*. The Plaintiffs have not suffered an "injury-in-fact" as required by *Singleton* and its progeny because they face no repercussions from the Policy. Defendants claim that the cases relied upon by Plaintiffs require that the litigant face criminal liability, monetary damages, or termination of one's job if he does not comply with the school policy-a consequence the Defendants claim is not present here. (Defs.' Pre–Hr'g Br. at 12–13)[3] Plaintiffs, however, assert that they will suffer an injury-in-fact because they are faced with the Hobson's choice of either defying what they consider to be a mandatory Policy[4] and potentially losing

2. The Supreme Court has held that there is a genuine obstacle facing a woman who seeks to assert her right to privacy regarding a pregnancy. *Singleton*, 428 U.S. at 117, 96 S.Ct. 2868. A woman may be "chilled from such assertion by a desire to protect the very privacy of her decision from the publicity of a court suit." *Id.* It is easy to imagine that this obstacle is present with even greater force for a female minor, who may, among other things, fear punishment from her parents or ridicule at school should her attempt to protect her privacy become public.

3. The parties submitted both pre- and post-hearing memoranda. References to the parties' pre-hearing briefs shall be referred to as "Pls.' or Defs.' Pre–Hr'g Br." References to the parties' post-hearing briefs shall be referred to as "Pls.' or Defs.' Post–Hr'g Br." The Amicus brief will be cited as "Am. Br."

4. Plaintiffs seize upon the "should" language in the Policy to show that it requires mandatory compliance by school officials. (Pl.'s Exh. A) ("After consultation with the Principal and Superintendent, the social worker should inform the parents"). For example,

their job or following the Policy and being in violation of constitutional, statutory and privilege norms.

■ Plaintiffs concede that such an injury has not yet occurred but that a pre-enforcement facial challenge, such as this one, has been upheld numerous times in the Supreme Court and Second Circuit. (Pls.' Post–Hr'g Br. at 8–10) (citing cases) However, the Court is not convinced that the Plaintiffs can satisfy the standard for a pre-enforcement challenge. Plaintiffs who "challenge[ ] a statute [before its enforcement] must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (citation omitted). "A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an 'actual and well-founded fear that the law will be enforced against' it." *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 382 (2d Cir. 2000) (quoting *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)).

Putting aside the fact that it is a public school Policy at issue here and not a statute where the Plaintiffs would face criminal prosecution or civil penalties for failure to comply, there still does not appear to be a realistic danger of any negative consequence flowing to the Plaintiffs from the Policy. As the testimony in the hearing showed, the Plaintiffs had no reason to believe that their jobs were at risk if they violated the Policy. First, Dr. Gordon testified that the Policy was not mandatory and that its application was discretionary. (Tr. 214–216) (terming the Policy a "guideline" and describing the availability of a "bypass" for a student that comes from, *inter alia,* a "difficult home situation"). Further, Plaintiff Weiden testified that she did not speak with Dr. Gordon regarding the meaning of nor the existence of any flexibility in the Policy, thus showing she had no reasonable foundation for her beliefs regarding the consequences of the Policy. (Tr. 80–82) Moreover, Dr. Gordon testified that he had no intention of disciplining staff members for failing to comply with the Policy. (Tr. 235–236) Indeed, Plaintiff Weiden conceded that she had never been faced or threatened with any disciplinary action, suffered any loss or threatened loss in salary, or undergone any transfer or change in assignment due to the Policy. (Tr. 74) Moreover, the number of students who seek Weiden as a counselor has "remained essentially the same" since the issuance of the memo. (Tr. 74–75) In fact, when asked if she "felt aggrieved in this case by the memo," Weiden answered, "No." (Tr. 75)

Indeed, it should not be glossed over that Plaintiffs claimed they would withdraw their complaint upon some sort of assurance by the Defendants that the Policy is merely precatory. (Pls.' Pre–Hr'g Reply Br. at 6 n. 18) ("Upon Defendants' stipulation that the [P]olicy is not mandatory but merely advisory, and that [P]laintiffs' exercise of discretion not to adhere to the [P]olicy's 'suggestions' will not be cause for any disciplinary action, [P]laintiffs are prepared to withdraw their complaint"). As discussed earlier, the hearing

the Policy states at the outset, "This memorandum is to clarify the right and *responsibility* of district staff, including school nurses, to inform a student's parents that she is pregnant." (*Id.*) (emphasis supplied) However, the Defendants claim and showed at the hearing that the Policy is not mandatory and that the Superintendent and Principal may exercise their discretion to refrain from notifying the parents. (Gordon Aff. ¶¶ 15–19; Tr. 214–16)

testimony and affidavit evidence submitted by the Defendants established that the Policy is not mandatory. (Tr. 235–36; Gordon Aff. ¶¶ 15–19) To the Court's knowledge, the Plaintiffs have not done as they promised. The Court therefore is tempted to dismiss the case on this basis alone.

Moreover, as is discussed *infra* in section III(A), the Court does not believe that the Policy violates any constitutional principles or State statutes and thus, the Plaintiffs may not base their injury-in-fact on those grounds.

In the case of Plaintiffs Mary Anne Cariello and the Port Washington Teacher's Association, the injury-in-fact is even more attenuated. According to Cariello's testimony, the PWTA is the bargaining unit for the teachers in the District. (Tr. 114) As such, they "represent the teachers and try to solve problems, if problems arise for teachers in the performance of their jobs as employees of the district." (Tr. 117) Since the teachers do not in fact face disciplinary action for failure to implement the Policy, then the PWTA may not then claim as a whole to suffer an injury-in-fact pursuant to the rules of third-party standing.[5]

Accordingly, since the Plaintiffs do not have third party standing in this case, the preliminary injunction is denied.

**5.** Since the suit fails for lack of standing on the first prong of the *Singleton* test, the Court only notes that the Plaintiffs would also likely fail because they are not the proper proponents of the students' rights. The Plaintiffs cite to *Romano v. Harrington* to show that a teacher may bring suit on behalf of third party students for violation of their constitutional rights. However, the Court was careful to state in *Romano* that Courts have eased strict construction of the *Singleton* standing test in the area of First Amendment law. Third party standing must be examined " 'without regard to the relationship between

## B. Ripeness

The parties have not raised the ripeness issue. However, since ripeness is partially a prudential doctrine of judicial restraint, the Court may consider the question upon its own motion. *National Park Hospitality Ass'n v. Department of Interior,* 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). The ripeness doctrine is primarily bottomed on the recognition that judicial decision-making is best conducted in the context of an actual controversy rather than in a hypothetical exercise of a parade of horribles. A claim is not ripe for adjudication if it rests upon " 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. U.S.,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). In testing the ripeness of a matter, the Court will look at (i) the fitness of the issues for judicial decision and (ii) the hardship to the parties of withholding court consideration. *Id.* at 301, 118 S.Ct. 1257 (citation omitted). In assessing the possible hardship to the parties resulting from withholding judicial resolution, the Court must ask whether the challenged action creates a "direct and immediate dilemma" for the parties. *Marchi v. Board of Coop. Educ. Servs. of Albany,* 173 F.3d 469, 478 (2d Cir.1999) (citations omitted).

The Court finds that the issues raised in this case are ill-suited for judicial

the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech.' " *Romano v. Harrington,* 664 F.Supp. 675, 681 (E.D.N.Y. 1987) (citing *Eisenstadt v. Baird,* 405 U.S. 438, 445 n. 5, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)). In this case, it is not so clear that the teachers' interests would always be aligned with those of the students' since the teachers seek to apply their own discretion as to when disclosure to the parents would be appropriate-a discretion that may often operate against the wishes of the student.

resolution at this stage and that the parties will suffer no undue hardship by the Court withholding consideration at this time. Plaintiff Weiden testified that only about two (2) students per year report being pregnant at Schreiber High School and of those teens "nearly all" of them voluntarily report their pregnancies to their parents. (Tr. 78–79) To date, since the memo was issued in November of 2002, there have only been approximately four (4) students concerned that they might be pregnant who have come to Michele Weiden. (Tr. 42) Of those four students, two never confirmed with the school that they were pregnant and two had already voluntarily informed their parents of the pregnancy. (Tr. 34–42)

In other words, there is no direct or immediate dilemma here. The Court will not read tea leaves to conjure up the existence of the correct future party in just the right potential factual scenario to make this case ripe for adjudication (read: a potential pregnant third-party student who would not want to disclose her pregnancy to her parents for reasons that she felt were in her best interest). Given Ms. Weiden's approximations of only two pregnant students per year, it begs the question of whether it is likely that we will ever have the ideal factual circumstance for this case. However, it is just this kind of speculation which the Court may not engage in. *Marchi*, 173 F.3d at 478 (finding that the court would be forced to guess at how the defendants might apply the directive in the case and to pronounce on the "validity of numerous possible applications of the directive, all highly fact-specific and, as of yet, hypothetical. Such an open-ended and indefinite challenge is not well suited to judicial decision"). Accordingly,

the Court here declines to review the case owing to its lack of ripeness.

Even if this Court were to find that this case presented a justiciable case or controversy, it would still find that the Policy does not implicate any lurking constitutional violations, State laws or privilege considerations.[6] Thus, the preliminary injunction is denied also because the Plaintiffs may not prove a likelihood of success on the merits on their claims.

## III. Preliminary Injunction

### A. Likelihood of Success

Plaintiffs claim that they are likely to succeed on the merits because the School District's Policy violates constitutional laws, State statutes, and privilege norms for school guidance counselors. Because the Court finds none of these arguments persuasive, it declines to issue the preliminary injunction on these grounds as well.

#### i. Constitutionality of the Policy

■ Plaintiffs claim they are likely to succeed on the merits with respect to their constitutional claim because the School District's Policy violates the student's constitutional right to privacy. (Pls.' Pre–Hr'g Br. at 9–12) According to Plaintiffs, the Policy implicates what the Supreme Court has recognized as a right to privacy for females in making health decisions, including those involving pregnancy, prenatal care, and abortion. Plaintiffs further assert that a student's right to privacy is coextensive with that of adult females. *Hodgson v. Minnesota*, 497 U.S. 417, 435, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (citations omitted) ("the constitutional protection against unjustified state intrusion into the process of deciding whether or not

**6.** The Plaintiffs have in part based their claims of an injury-in-fact for standing pur-

poses on alleged constitutional violations.

to bear a child extends to pregnant minors as well as adult women"). Finally, citing *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), the Plaintiffs claim that the Defendants must show that the notification Policy at issue contains a judicial bypass procedure in order to pass constitutional muster.

The Court does not believe-as the Plaintiffs assert-that the *Bellotti* test for mandatory parental consent to abortion needs to be satisfied here. In *Bellotti,* the Supreme Court found unconstitutional a Massachusetts statute requiring pregnant minors seeking an abortion to obtain the consent of their parents. 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). The Court held that if the State were to require a pregnant minor to obtain one or both parents' consent to an abortion, it must also provide a judicial bypass alternative. *Id.* at 643, 99 S.Ct. 3035. In such a bypass proceeding, a pregnant minor would be entitled to judicial authorization of her abortion if she could satisfy the twin requirements of showing she is mature enough to make the decision and that the desired abortion would be in her best interests. *Id.*

Plaintiffs here argue that the Policy at issue is unconstitutional because it does not contain such a judicial bypass procedure. However, *Bellotti,* and the other cases upon which the Plaintiffs rely, all involve laws requiring either parental consent for abortion[7] or parental notification prior to abortion.[8] As Defendants correctly point out, there may very well be a very real constitutional distinction between laws requiring consent and notification for abortion and the pregnancy notification Policy

here. (Defs.' Post–Hr'g Br. at 6–9) Even after oral argument and the opportunity to file post-hearing briefs, Plaintiffs utterly fail to address whether there is a distinction between notification of pregnancy and consent/notification to abortion. This Court believes there is.

The Policy at issue here does not even address abortion, but rather merely provides for notification of a student's pregnancy. Plaintiffs may not stretch the protections that apply to a minor seeking an abortion to cover the disclosure of her pregnancy to her parents. No Court has created a right to privacy for minors for such a situation and the Court here declines to do so as well. Plaintiffs' unblinking reliance on the consent to abortion line of cases is thus misplaced. Indeed, it is the school's unquestioned obligation to inform parents of the conditions that affect the health, safety, and welfare of their child. 8 N.Y.C.R.R. § 136.3(a)(5) (providing that "it is the duty of the trustees and boards of education...to advise, in writing, the parent or guardian of each child in whom any aspect of the total school health service program indicates a defect, disability or other condition which may require professional attention with regard to health"). Failure to comply with this obligation that results in harm to the child-whether deliberate or negligent-would clearly be grounds for legal claims against the District.

In addition, the Court also does not believe that the cases discussing laws requiring a minor to notify her parents of her abortion decision are applicable here. The distinction between notification of abortion and notification of pregnancy is

---

**7.** *See, e.g., Bellotti,* 443 U.S. at 642, 99 S.Ct. 3035 (involving Massachusetts parental consent to abortion statute); *Planned Parenthood v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (involving Missouri parental consent statute).

**8.** *See, e.g., Hodgson v. Minnesota,* 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (involving Minnesota parental notification of abortion statute).

not a formalistic one. Parental notification of a student's pregnancy does not intrude on the student's right to ultimately seek an abortion or to carry her fetus to term. Since the Policy here poses an even lesser invasion on the student than the burden at issue in the abortion notification cases, the Court finds the standards in those cases inapplicable to the Policy here.[9]

As such, this case has found itself perfectly placed in a constitutional no-man's land. The mandatory consent to abortion cases and the mandatory notification of abortion cases have no bearing on the present case. Thus, the Plaintiffs' attempt to fit their case into these precedents is unavailing.

### ii. State laws and confidentiality considerations

The Court is equally convinced that the Policy is not in derogation of any State laws or professional confidentiality obligations. Plaintiffs and Amici cite to a litany of State laws and confidentiality provisions in an attempt to cobble together a school employee-student privilege with respect to pregnancy. It is true that, in many ways, this is a case of first impression as no Court has construed the State statutes and confidentiality obligations to create such a privilege. This Court declines to read these sources as creating such a duty of confidentiality for Plaintiffs.

First, Plaintiffs cite to federal statutes governing the Public Health and Welfare to establish a duty for school em- ployees not to disclose pregnancy information to students' parents. However, these laws are inapposite here as they mandate confidentiality only for drug and substance abuse counseling. See, e.g., 42 U.S.C. 290dd–2(a) (2004) (mandating that records of any "patient which are maintained in connection with the performance of any program or activity relating to substance abuse" must not be disclosed); 42 C.F.R. 2.12(a)(1)(2004) (restricting disclosure on any information that would "identify a patient as an alcohol or drug abuser" either directly or indirectly). Lest there be any question as to whether these provisions may be expanded to shelter disclosure of other medical records, the case law has affirmatively answered in the negative. Commissioner of Soc. Servs. of N.Y. v. David R.S., 55 N.Y.2d 588, 592, 451 N.Y.S.2d 1, 436 N.E.2d 451 (1982) (finding "patient" may seek safe harbor of U.S.C. 290dd–2(a) only if at one time the individual has sought drug abuse counseling from the same institution).

Moreover, it is not clear that these statutes would apply to school employees. Indeed, it should be noted that the Family Educational Rights and Privacy Act of 1974 ("FERPA") would seem to require that a school disclose a student's pregnancy to her parents. FERPA mandates that schools that receives federal funding may not deny parents access to "educational records." 20 U.S.C. § 1232g. FERPA broadly defines "educational records" to include any materials which "contain infor-

---

9. Even if this Court were to decide that this case were subject to the lower constitutional standards of the abortion notification laws- which it does not-the Policy would stand because it provides the Superintendent and Principal discretion as to its application. The Courts in the parental notification cases have found that notification of abortion is far less burdensome than the consent to abortion situation. See, e.g., Hodgson, 497 U.S. at 496, 110 S.Ct. 2926. For example, in Planned Parenthood of the Blue Ridge v. Camblos, the Court held that the Virginia Parental Notice Act, which required minors seeking an abortion to notify one or more parents, was constitutional because it contained exceptions for students in abusive or neglectful family situations. 155 F.3d 352, 375 (4th Cir.1998), cert. denied, 525 U.S. 1140, 119 S.Ct. 1031, 143 L.Ed.2d 40 (1999). Since this Policy also contains such exceptions, it would pass this test with flying colors.

mation directly related to a student; and are maintained by an educational agency or institution." § 1232g(a)(4)(A)(i)(ii). Such a broad definition would seem to cover records evidencing the pregnancy of a student.

■ Second, Plaintiffs identify various State statutes governing public health to create a duty of confidentiality. As a threshold matter, however, those laws discussing abortion or prenatal care are inapplicable here because as explained above, the Policy here does not on its face implicate these decisions. *See, e.g.,* N.Y. Pub. Health Law § 17 (McKinney 2005) (involving release of records concerning abortion by a "treating physician or hospital"); N.Y. Pub. Health Law § 2504(3) (McKinney 2005) (stating "[a]ny person who is pregnant may give effective consent for medical, dental, and health and hospital services relating to prenatal care").

Finally, any law dealing with confidentiality of records in a hospital is irrelevant to such records in a school. *See, e.g.,* 10 N.Y.C.R.R. § 405.7(c)(13) (outlining patient's bill of rights and including "privacy while in the hospital and confidentiality of all information and records regarding your care"). The school inhabits a unique position of being *in loco parentis* and thus ultimately must inform the parents of any relevant information regarding their child-unlike a hospital where the child may have paid the institution herself for its services.

Again, if anything, New York State law counsels toward disclosure to the parents. *See* 8 N.Y.C.R.R. § 136.3(a)(5) (providing that "it is the duty of the trustees and boards of education...to advise, in writing, the parent or guardian of each child in whom any aspect of the total school health service program indicates a defect, disability or other condition which may require professional attention with regard to health").

### iii. *Privilege*

■ With respect to the Plaintiffs' privilege claims, the Court must again draw a distinction between private, licensed medical or psychological professionals and school employees. Hence, it matters not that New York law may provide for a duty of confidentiality for private social workers. *See* N.Y. C.P.L.R. § 4508 (McKinney 2005) ("A person duly registered as a certified social worker... shall not be required to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment"). As the Court clearly stated in *Board of Educ. of N.Y. (Philip Stern),* 31 Ed. Dep't Rep. 378, 380 (1992), "Plaintiff's reliance upon [C.P.L.R. § 4508] is misplaced. The school social worker is a paid employee of the school district who does not receive compensation from students or their parents. No decision of the courts or the Commissioner of Education has yet granted privilege status to communication between a student and school personnel."

■ In addition, the Court must remind the parties that a testimonial privilege is not the same animal as a general ethical obligation of confidentiality. Stephen R. Ripps et al., *To Disclose of Not to Disclose: The Dilemma of the School Counselor,* 13 Miss. C.L.Rev. 323, 326 (1993) (outlining differences between testimonial privilege which has the force and effect of law and codes of ethical standards governing communications outside of government proceedings which do not have legal force). Thus, *In Re Charles RR,* 166 A.D.2d 763, 563 N.Y.S.2d 123 (3d Dep't 1990) does not affect the outcome of this case. *In Re Charles RR* involved whether a physician-patient testimonial privilege applied to a school psychologist in a court proceeding. *Id.* However, here we are not dealing with whether a professional may

testify in a public proceeding regarding the student, but rather, the more limited scenario of whether the professional must disclose to the student's parents the fact of her pregnancy.

Thus, there are no constitutional, statutory or privilege norms governing the situation posed here. In addition, as a policy matter, it is the parent's—and not the school's—responsibility to make decisions in the best interests of their child. The School here must provide the parents with the information regarding the student's pregnancy so that they may make a well-informed decision. "Public schools must not forget that 'in loco parentis' does not mean 'displace parents.'" *Gruenke v. Seip*, 225 F.3d 290, 307 (3d Cir.2000) (expressing "considerable doubt" as to whether school counselors may withhold information of a student's pregnancy from her parents).

As the 4th Circuit in *Camblos* so eloquently stated:

> To hold otherwise, we are convinced, would be to turn child from parent, and parent from child-at the very moment in life when each is in most need of the other. Such a plenary violation of family the Constitution [may not] be construed to require.

155 F.3d at 384.

### B. Irreparable Harm

 No facts or circumstances of irreparable harm have been presented to this Court. In the Second Circuit, irreparable harm is injury that is not remote or speculative but actual and imminent, and "for which monetary award cannot be adequate compensation." *Tom Doherty & Assocs.*, 60 F.3d at 37 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). As discussed previously, it is not within the province of this Court to speculate on what harm, if any, may occur in any given case. Under the school's Policy, the ultimate arbiters of

whether to notify the parents are the Superintendent and the Principal. Superintendent Gordon testified that if he was made aware of abusive domestic conditions or more generally a "difficult home situation," he would exercise his discretion as to whether to notify the parents of the pregnancy. (Tr. 216) This practice does not constitute irreparable harm to the Plaintiffs. Beyond that, the Court need not speculate.

One must not lose sight of the fact that the irreparable harm to the Defendants if the preliminary injunction is granted may be tremendous. Should the school fail to inform the parents of a student's pregnancy and the student in any way is physically injured (through pregnancy complications or otherwise), it is the school that will face civil and perhaps criminal liability. Given this, it seems clear that severe irreparable harm might well come to the Defendants if the preliminary injunction is issued.

### CONCLUSION

By virtue of the foregoing, Plaintiffs' motion for preliminary injunction is DENIED.

SO ORDERED.