[897 NYS2d 1]

KEIRA M. BODERICK, an Infant, by Her Mother and Natural Guardian, EDITH M. LEE, et al., Appellants, v R.Y. MANAGEMENT CO., INC., et al., Respondents, et al., Defendant.

First Department, December 29, 2009

APPEARANCES OF COUNSEL

*Kravet, Hoefer & Maher, P.C.*, Bronx (*John A. Maher* of counsel), for appellants.

*Fabiani Cohen & Hall LLP*, New York City (*Lisa A. Sokoloff* and *John V. Fabiani, Jr.*, of counsel), for respondents.

## OPINION OF THE COURT

RICHTER, J.

Plaintiffs Edith Lee and her 14-month-old daughter Keira Boderick were injured when, while attending a barbeque in the common area of a building owned and managed by the respective defendants-respondents, a party guest emptied hot cooking oil from a deep-fat turkey fryer into a nearby storm drain while another person poured water from a garden hose on the grate of the drain. The oil's contact with water caused a reaction resulting in fire and a steam cloud. Lee was burned on the back of her legs and Boderick suffered burns on her face, hands, legs and arms. The infant, who was hospitalized for over two months and underwent several skin graft surgeries, has numerous permanent scars on her body, hearing loss, speech impairment and developmental deficits. The court below granted respondents' motion for summary judgment and dismissed the complaint as against them, finding, as a matter of law, that their actions

were not the proximate cause of plaintiffs' injuries. We now reverse.

The evidence before the motion court revealed that on July 4, 2003, defendant Linda Lanier and her husband Hosea Swinson hosted the barbeque at the building, a 16-story multiple dwelling in the Bronx.[1] Prior to the party, Elron Williams, the building's superintendent, gave Swinson permission to hold the party in a partially enclosed gated alcove on the building's ground floor. On the morning of the party, Williams unlocked the gate to the alcove area and Swinson set up the cooking equipment, including two charcoal grills and a deep-fat turkey fryer.[2] Swinson specifically told Williams that the fryer would be used at the barbeque, which was attended by approximately 150 people.

The fryer consisted of a two-foot-high metal cooking pot that sat on a burner and tripod standing approximately eight inches off the ground. A 20-pound round propane tank, approximately two feet high, was attached to the fryer by a hose and provided fuel to heat the pot. To cook in the deep fryer, a large quantity of cooking oil must be heated in the pot to a very high temperature. The record indicates that in this case, eight gallons of oil were heated to a boil, indicating that the oil was at least 425 to 450 degrees Fahrenheit.

Despite the fact that a turkey fryer was being used, a building employee, identified by Swinson as superintendent Williams, provided Elder Sanders, a guest at the party who tended the fryer, with a garden hose. Williams unlocked the door to a nearby storage room, turned on the water and unraveled the hose. Because the end of the hose did not have a nozzle which would allow the party organizers to regulate the water flow, Williams left the water running.[3] The hose was placed near the cooking area and the water flowed into a nearby storm drain, continuously running during the entire time Sanders was cooking. After frying a number of turkeys, Sanders left the area to

---

**1.** The complaint was also dismissed as against Lanier, but that part of the court's order is not challenged on this appeal.

**2.** Although at his deposition, Williams denied any knowledge of the party, respondents do not contest, for purposes of this appeal, that the party was held with their permission. Nor do they contest that their agents or employees were aware of the use of the turkey fryer on the premises.

**3.** The dissent notes that there was contradictory deposition testimony as to whether the hose had a nozzle. Any factual questions raised by the depositions would warrant the denial of summary judgment, not the granting of summary judgment to respondents.

get some cigarettes. Sometime thereafter, a party guest named DJ emptied the hot oil into the drain while another attendee poured water from the hose onto the drain. The oil's contact with water from the hose or in the drain caused a fire and steam cloud resulting in plaintiffs' injuries.

A landowner has a duty to maintain its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to third parties, the potential seriousness of the injury and the burden of avoiding the risk (*Basso v Miller*, 40 NY2d 233, 241 [1976]; *Branham v Loews Orpheum Cinemas, Inc.*, 31 AD3d 319, 322 [2006], *affd* 8 NY3d 931 [2007]). In order to recover damages for an alleged breach of this duty, the plaintiff must first demonstrate that the defendant created or had actual or constructive notice of the hazardous condition which precipitated the injury (*Beck v J.J.A. Holding Corp.*, 12 AD3d 238, 240 [2004], *lv denied* 4 NY3d 705 [2005]). The plaintiff must also show that the defendant's negligence was a proximate cause of the injuries. To do so, the negligence must be a substantial cause of the events which produced the injury (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]).

■ Viewing the evidence in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor (*see Boyd v Rome Realty Leasing Ltd. Partnership*, 21 AD3d 920, 921 [2005]), we find that there are triable issues of fact as to whether respondents, by allowing the turkey fryer to be used while providing a continuously running water source in close proximity, breached their duty to maintain the premises in a safe condition, and whether that breach proximately caused plaintiffs' injuries.

Plaintiff submitted an affidavit from a fire prevention and safety expert who stated that cooking using a deep-fat turkey fryer is an activity fraught with danger. The expert explained that the National Fire Protection Association and the American Burn Association discourage consumer use of deep fryers and warn against the dangers of their use. According to the expert, because the deep fryer here included a 20-pound propane tank, it could not be lawfully used on the premises under the then-existing New York City Fire Code (former 3 RCNY 25-01 [c] [5]). Additionally, he stated that the use of the turkey fryer with the propane tank also violated section 25-01 (f) (2) of the former Fire Code because the fryer had not been approved or listed by a nationally recognized testing laboratory.

The expert explained that the accident here occurred when the hot oil came into contact with the water. As a result, pockets of steam were formed which exploded through the oil spewing superheated water and hot oil through the air. The expert stated that the dangerous combination of hot oil and water is a known hazard encountered with the use of turkey fryers, a warning reiterated by the New York City Fire Department. Indeed, Underwriters Laboratories, a product safety certification organization, refuses to certify turkey fryers and specifically notes that "oil and water don't mix," warning that such a combination could cause a fire or explosion hazard. In light of this evidence, and given the dangers inherent in hot oil mixing with water, a jury could reasonably find that by allowing the fryer to be used while providing a continuously running water source nearby, respondents breached their duty of care by creating or exacerbating a dangerous condition (*see Schosek v Amherst Paving, Inc.*, 11 NY3d 882, 883 [2008]; *Figueroa v West 170th Realty, Inc.*, 56 AD3d 299 [2008]).

In attempting to distinguish *Schosek* and *Figueroa*, the dissent apparently believes that this opinion turns on a finding that respondents had a duty to control the actions of third parties on their premises. This misconstrues the primary basis on which summary judgment should be denied. Here, the triable issue of fact is whether respondents' actions created or exacerbated a dangerous condition, the very legal issue addressed in these two cases. Moreover, even the dissent acknowledges the legal principle that respondents could be held liable if they had the opportunity to control the third parties and were reasonably aware of the need to intervene.

Respondents maintain that, regardless of any breach of the duty of care, the accident was not foreseeable as a matter of law because it was caused by an intervening act, namely the party guests' disposal of the oil down the drain. It is well settled that where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence (*Derdiarian*, 51 NY2d at 315). However, the plaintiff need not establish that the precise manner in which the accident occurred was foreseeable (*White v Diaz*, 49 AD3d 134, 140 [2008]). Rather, it is sufficient that she demonstrate that the risk of some injury from the defendant's conduct was foreseeable (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 562 [1993]).

■ We find that there is an issue of fact as to whether it was reasonably foreseeable that the hot oil from the fryer could come into contact with the water resulting in injury. Given the evidence that superintendent Williams provided running water from the hose in close proximity to the turkey fryer and that there were a large number of guests at the party, a jury could reasonably conclude that some accident resulting from contact between hot oil from the fryer and the water could occur, whether by oil spilling out of the fryer, the fryer falling over or, as here, the oil being poured into the nearby drain. The record does not establish whether the steam explosion occurred because the hot oil combined with water that had already run down the drain or water being poured from the hose. The outcome would be the same in either circumstance because a jury could reasonably find that the water that contributed to the accident came from the continuous running of respondents' hose.

We do not believe that the guests' disposing of the oil into the drain was so extraordinary or attenuated from respondents' conduct so as to relieve respondents of liability as a matter of law (see Derdiarian, 51 NY2d at 315). There is evidence in the record that superintendent Williams knew the fryer was in use in this area, was aware that the hose with the running water was placed near the fryer and, as a result of his duties at the complex, knew where the storm drains were located. Despite this, there is no evidence that Williams inquired as to whether the party organizers had come up with a safe method to dispose of the oil. Under these circumstances, a jury could reasonably find that Williams could have anticipated that party guests would get rid of the oil by pouring it down the drain. Because questions concerning what is foreseeable may be the subject of varying inferences, these issues should be for the jury to resolve (see id.). Thus, the motion court erred in determining that the accident was unforeseeable as a matter of law.

Accordingly, the order of Supreme Court, Bronx County (Stanley Green, J.), entered on or about June 9, 2008, which, to the extent appealed from as limited by the briefs, granted respondents' motion for summary judgment dismissing the complaint as against them, should be reversed, on the law, the motion denied and the complaint against respondents reinstated.

GONZALEZ, P.J. (dissenting). On July 4, 2003, plaintiffs Edith Lee and her 14-month-old daughter, Keira Boderick, went to a barbeque at 2311 Southern Boulevard, Bronx, New York. The

party was hosted by Hosea Swinson, whose wife, Linda Lanier, was a tenant in the building. The building was co-owned by defendants Grote Street Associates and Twin Parks Northeast Site II Houses. R.Y. Management Co., Inc. was the building's managing agent.

Elron Williams, the building's superintendent, gave Swinson permission to hold the party in a partially enclosed alcove on the building's ground floor. Williams also provided Swinson with a garden hose for cleanup. The hose was connected to a water source in an adjacent laundry room. There were storm drains on the ground. Swinson brought the cooking equipment for the party, including two grills and a turkey fryer that held eight gallons of cooking oil and was heated by a propane tank. The fryer was placed against the wall of the building.

Deposition testimony indicates that during the barbeque, someone poured the hot oil from the turkey fryer into one of the storm drains, and another person may have poured water from a garden hose on the grate of the same drain. The oil's contact with water caused a steam explosion. Both plaintiffs, who were near the drain at the time, suffered burns from the explosion. The infant plaintiff's injuries were particularly severe. She spent over two months in the burn unit of the hospital, underwent multiple surgeries and skin grafts, and has permanent hearing loss, speech impairment, and scars on her face, hands, legs and body.

Plaintiffs brought this action against the building's owners, the managing agent, and the tenant-hostess, Lanier.[1] The amended complaint alleges, inter alia, that these defendants were negligent in (1) failing to properly supervise and control visitors on their property; (2) allowing the use of a dangerous turkey fryer in a partially enclosed alcove of the building; (3) exacerbating the danger posed by the turkey fryer by supplying the party's hosts with a garden hose.

Upon completion of discovery, defendants moved for summary judgment, arguing that they had no duty to plaintiffs to prevent third parties from pouring hot oil into a storm drain with water, the undisputed cause of the steam explosion. They also argued that while continued use of the fryer throughout the day may have furnished the occasion for a need to dispose of oil, it was not the legal cause of the steam explosion that caused plaintiffs'

---

1. Lanier never appeared in the action. The order appealed from dismissed the complaint against her, a determination that has not been challenged on the appeal.

injuries. In opposition, plaintiffs contended that there was a question of fact whether defendants breached a duty to them, as the depositions supported an inference that the building superintendent was the individual who poured the water on the drain. They also argued, in reliance upon the affidavit of their fire prevention and safety expert, that the steam explosion was a foreseeable consequence of allowing the use of a propane turkey fryer in an alcove area in close proximity to guests. In reply, defendants offered the affidavit of their own fire/burn investigation consultant. This expert opined that defendants did not act unreasonably in permitting the use of the turkey fryer in the "unenclosed courtyard," and that none of the rules alleged to have been violated were connected to the happening of the accident.

The court granted defendants' motion. It held that there was no factual dispute as to the cause of the accident, and that no inference could be drawn from the speculative deposition testimony of one witness that it was the superintendent who poured water onto the storm drain. The court concluded that none of plaintiffs' theories of alleged negligence—the use of the turkey fryer, its location, or the use of the propane tank—were a proximate cause of plaintiffs' injuries. I would affirm this determination.

The law is settled that defendants, as landowners, have a duty to act in a reasonable manner to prevent harm to those on their property (*D'Amico v Christie*, 71 NY2d 76, 85 [1987]). This includes an obligation to control the conduct of third persons on the property when they have the opportunity to control such persons and are reasonably aware of the need for such control (*id.*). Further, "[w]here the evidence as to the cause of the accident which injured plaintiff is undisputed, the question as to whether any act or omission of the defendant was a proximate cause thereof is one for the court and not for the jury" (*Rivera v City of New York*, 11 NY2d 856, 857 [1962]). Moreover, the negligence complained of must have caused the occurrence of the accident from which the injuries flowed, not merely set the occasion for or facilitated its occurrence (*id.*).

The Court of Appeals' decision in *Rivera* is instructive. There, the plaintiff had complained to the superintendent of the premises that hot water was leaking from the faucet of a bathtub and that the drain pipe was bent in such a manner that the water would not flow out until it reached the height of the overflow, with the result that the bathtub was always filled with

hot water. Three or four weeks after the tenant lodged the complaint, his nine-year-old son entered the bathroom at 11:30 P.M. and tried to reach a light cord by standing on the edge of the tub. The child was wearing wet boots, lost his balance, and slipped and fell into the hot water, severely burning his lower back. The Court of Appeals held that the hot water may have injured the child, but that the accident was proximately caused by the unforeseeable act of the child slipping in wet boots while balancing on the curved edge of the bathtub.

Here, it is undisputed that third parties caused the steam explosion by pouring hot oil from the turkey fryer into a storm drain, and that the oil came into contact with water either in the drain or from the hose.[2] In my view, the existence of the turkey fryer, storm drains and hose may have provided the occasion for this accident, but it was not reasonably foreseeable that a third party would try to dispose of the oil in this manner. In fact, plaintiffs' own expert set forth the hazards normally associated with use of turkey fryers—tipping, spilling oil, overfilled pots, overheated oil, hands contacting the pot—and disposing of the oil in conjunction with water is not one of them.

It is the majority's position that defendants breached their duty to plaintiffs by allowing the fryer to be used "while providing a continuously running water source nearby," and that there is an issue of fact as to whether defendants are liable for "creating or exacerbating a dangerous condition." However, the cause of this accident is undisputed, and it was a third party, not defendants, who poured the hot oil into the storm drain. I would find that defendants' activities may have set the occasion for an

---

2. The majority states that
   "[b]ecause the end of the hose did not have a nozzle which would allow the party organizers to regulate the water flow, [the superintendent] left the water running. The hose was placed near the cooking area and the water flowed into a nearby storm drain, continuously running during the entire time [that the turkey chef] was cooking."
This is not the uniform recollection of the deponents. Several witnesses testified that the hose had a nozzle which could control the flow of water. In addition, there is deposition testimony that the drain was a distance from where the cooking took place. Thus, we cannot conclude, as a matter of law, that the superintendent left a steady stream of water "in close proximity" to the hot turkey fryer. Further, it is uncontested that the explosion causing plaintiffs' injuries did not occur until someone attempted to pour boiling oil into the drain. Furthermore, any dispute as to whether there was running water in close proximity to the turkey fryer does not rise to the level of a material disputed issue of fact warranting the denial of summary judgment.

accident, but they did not cause plaintiffs' injuries (*see Rivera*, 11 NY2d at 857).

The majority cites *Schosek v Amherst Paving, Inc.* (11 NY3d 882 [2008]) and *Figueroa v West 170th Realty, Inc.* (56 AD3d 299 [2008]) in support of denying summary judgment. These cases are both factually distinguishable. Neither involved the duty to control the actions of third parties. In *Schosek*, the Court of Appeals found that there were issues of fact as to whether a defendant paving company had created or exacerbated a dangerous condition for drivers by temporarily halting its operations on a roadway, leaving a height differential of $4^1/_2$ inches between the paved portion of the roadway and a gravel shoulder. The plaintiff was injured when she lost control of her car after driving onto the shoulder and then attempting to navigate the height differential to return to the traveled portion of the roadway.

In *Figueroa*, the plaintiff slipped and fell on snow and ice outside the defendants' building, and this Court affirmed the denial of the building owner's motion to dismiss the complaint. We found issues of fact as to whether the owner was responsible for removing the snow and ice in the area where plaintiff fell, and whether it had exacerbated a dangerous condition by not completing its shoveling across the entire property (56 AD3d at 299).

Here, unlike *Schosek* and *Figueroa*, the alleged breach of duty involved failing to prevent third parties from simultaneously pouring boiling oil from a turkey fryer and water from a hose into the storm drain. In such a situation, defendants would only be liable where they had the opportunity to control the third parties and were reasonably aware of a need to intervene. An example of such a case, cited by plaintiffs, is *Lasek v Miller* (306 AD2d 835 [2003]). In *Lasek*, the infant plaintiff was injured when she was playing on a trampoline with three other children. The trampoline was owned by the defendants and it contained a clear warning that it was to be used by one person at a time. The Fourth Department held that there was a triable issue of fact as to the landowners' liability, based upon their knowledge of the unsafe use of the trampoline, and a reasonable opportunity to prevent or control it.

Similarly, in *White v Diaz* (49 AD3d 134 [2008]), cited by the majority, we affirmed the denial of a motion for summary judgment made by the driver and owner of a van which was rear-ended while double-parked on a city street. We concluded that a

third party's rear-end collision with the van was a reasonably foreseeable consequence of double-parking, even for five minutes, on a busy city street.

Here, by contrast to *Lasek* and *White*, a steam explosion was not a foreseeable consequence of these defendants' acts in allowing the hosts to have a barbeque, with a turkey fryer, on their property. Defendants did not own the turkey fryer, they did not operate it at any time during the barbeque, and there is no evidence, other than speculation by one of a number of attendees at the party, that anyone connected with defendants was near the storm drain where the accident occurred, that defendants left running water from a hose in close proximity to the turkey fryer, or that they had an opportunity to stop the parties who were pouring the oil into the storm drain.

Accordingly, I would affirm the motion court's determination to grant defendants' motion for summary judgment dismissing the complaint.

MAZZARELLI, SWEENY and RENWICK, JJ., concur with RICHTER, J.; GONZALEZ, P.J., dissents in a separate opinion.

Order, Supreme Court, Bronx County, entered on or about June 9, 2008, reversed, on the law, the motion denied and the complaint against respondents reinstated.