■ JAYVAUN STEPHENSON et al., Respondents, v CITY OF NEW YORK et al., Appellants. [925 NYS2d 71]—

Order, Supreme Court, Bronx County (Larry S. Schachner, J.), entered August 11, 2009, which denied defendants' motion for summary judgment dismissing the complaint and granted plaintiffs' cross motion for summary judgment on the issue of liability, reversed, on the law, without costs, defendants' motion granted and plaintiffs' denied. The Clerk is directed to enter judgment dismissing the complaint.

The issue before us is whether defendants, who are deemed to have had prior notice of an assault on the almost 14-year-old plaintiff Jayvaun Stephenson, are liable for negligently failing to prevent the assault. On October 22, 2003, Stephenson, a student at Middle School 113 in the Bronx, and Lorenzo McDonald, a fellow student, had a fistfight on the school grounds, during which McDonald punched Stephenson once in the face and Stephenson punched McDonald twice. Neither boy was significantly injured. School authorities punished Stephenson with a one-day, in-school suspension, and McDonald, who was found to have started the incident, received a one- to two-week suspension. The school also dismissed Stephenson that day and directed him to go straight home so that he would not encounter McDonald again that day. Upon arriving at home, Stephenson

did not tell his mother or grandmother, with whom he lived, about the fight with McDonald. The next day, October 23, Stephenson served his one-day suspension and was still on school grounds when he encountered McDonald, who told Stephenson he was "going to get [Stephenson] jumped." Again, Stephenson did not tell his mother or grandmother about this threat; nor did he report it to school authorities.

Before school began on the morning of October 24, Stephenson exited a subway station approximately two blocks from the school and saw McDonald across the street. Stephenson entered a store, from which three accomplices of McDonald pulled Stephenson outside to the street where McDonald was waiting. While two accomplices held Stephenson's hands behind his back, McDonald and the third accomplice repeatedly punched Stephenson in the face for several minutes and fractured his jaw in two places.

Plaintiffs commenced this personal injury action in April 2004, alleging that the October 24 assault was a continuation of the October 22 fistfight and that defendants were negligent in failing to take action to prevent the assault by notifying Stephenson's mother about the fistfight. In an affidavit, the mother stated that, if the school had notified her about the fight, she would have asked to meet with the school and McDonald's parents to iron out the differences between the two boys, and would have either kept Stephenson at home or had him escorted to school until "the problem had apparently been resolved."

After a series of discovery disputes between the parties, plaintiffs moved for an order striking the answer for defendants' repeated failure to comply with orders directing them to produce school records about the October 22 incident. In a December 2008 order that was not appealed, the motion court granted plaintiffs' motion to the extent of sanctioning defendants by ruling that "the issue of prior notice to the defendants of the October 24, 2003 incident is resolved in [plaintiffs'] favor and defendants are precluded from raising any issue with respect thereto."

In the order on appeal, the motion court premised its grant of partial summary judgment to plaintiffs on its sanction in the December 2008 order. As the court viewed the matter, since its prior ruling meant that "defendants were on notice of the previous [October 22] assault [and] the threat to [Stephenson], as well as . . . [McDonald's] history of violence," the school was on notice of the October 24 assault and, contrary to defendants' position, the assault was foreseeable. The court acknowledged

that a school normally has no duty of care to a student injured off school grounds (*see e.g. Norton v Canandaigua City School Dist.*, 208 AD2d 282, 285 [1995], *lv denied* 85 NY2d 812 [1995]), but found that, while Stephenson was in the school's custody on October 22, the school breached its duty to notify his mother about the fistfight. By breaching this duty, the court concluded, the school "failed to prevent a further escalation of the incident" and accordingly was liable for Stephenson's injuries.

We find no liability on defendants' part, despite the motion court's sanction ruling. Contrary to the dissent's contention, the mother's claim that she could have prevented the assault is entirely speculative. McDonald could have attacked Stephenson at any time, possibly weeks later, or at any place, and the mother's presence would not necessarily have been a deterrent to what after all was a targeted attack. The suggestion that McDonald's planned criminal assault upon Stephenson would have been prevented by his mother's accompanying her almost 14-year-old son to school every day does not rise above speculation. Nor does the notion that the attack would have been prevented by the juvenile authorities if the mother had known of the fight seem any more realistic. Fights among middle school students occur frequently, the school did not see a basis to contact the juvenile authorities based on what happened on October 22, and it is not reasonable to believe that the juvenile authorities would have intervened. This seems particularly so where the school had already taken disciplinary action, including suspension, against the perpetrator.

Finally, we find it unreasonable to impose a duty on the school to notify a parent about a fight between two students when the school has already affirmatively addressed the misconduct. In *Matter of Kimberly S.M. v Bradford Cent. School* (226 AD2d 85 [1996]), cited by the dissent, the Court found that a teacher who had been notified by a child of sexual abuse had no common-law duty to inform the parents because the abuse took place outside of school. Although here the first fight occurred on school grounds, as in *Kimberly*, the risk of danger arose from potential conduct away from school by a third party, not from anything the school did or failed to do. Similarly, in *Anglero v New York City Bd. of Educ.* (2 NY3d 784 [2004]), also cited by the dissent, the duty imposed upon the school derived from its failure to stop an assault on school premises that led to a further assault shortly afterward off school grounds. All the other cases cited by the dissent involve failure to act on the part of school officials with respect to students in the custody of the school. Concur—Friedman, DeGrasse and Freedman, JJ.

Saxe, J.P., and Abdus-Salaam, J., dissent in a memorandum by Saxe, J.P., as follows: When a student assaults another student during school hours and on school property, and then assaults the same student again two days later off school grounds, the school may, in appropriate circumstances, be liable for the victim's injuries arising from the second assault, if the second incident was foreseeable and the school failed to take appropriate action to prevent it.

The majority finds, as a matter of law, that even if the school breached its duty, its conduct was not the proximate cause of the victim's injuries, because the other student's intentional acts were an intervening cause. I disagree, concluding that the evidence in the record establishes the existence of triable questions of fact as to whether the school breached its duty and whether that breach was a proximate cause of the harm. I would therefore affirm the denial of defendants' motion for summary judgment, and reverse the grant of plaintiffs' cross motion for summary judgment on the issue of liability, leaving that issue for the finder of fact.

"Negligence arises from breach of duty and is relative to time, place and circumstance" (*Sadowski v Long Is. R.R. Co.*, 292 NY 448, 455 [1944]). Courts determine the existence and scope of duty (*Donohue v Copiague Union Free School Dist.*, 64 AD2d 29, 33 [1978]) with reference to "what is socially, culturally and economically acceptable" (*Darby v Compagnie Natl. Air France*, 96 NY2d 343, 347 [2001]). If duty exists, breach of duty occurs when an actor fails to do what a reasonable person would have done under the same circumstances (*Sadowski*, 292 NY at 454). Negligent actors in breach of duty are liable only if their negligence was a proximate cause of the harm, that is, if the breach of duty was a substantial factor in bringing about foreseeable harm (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). Schools have a duty of care towards students because they act in loco parentis; that is, they take the place of parents while students are in their custody, and therefore must act with the same care "as a parent of ordinary prudence would observe in comparable circumstances" (*Hoose v Drumm*, 281 NY 54, 57-58 [1939]; *see Pratt v Robinson*, 39 NY2d 554, 560 [1976]; *Garcia v City of New York*, 222 AD2d 192, 194 [1996], *lv denied* 89 NY2d 808 [1997]).

A liability determination by the finder of fact will therefore be appropriate in the present context if it is found, first, that the school, acting in loco parentis, breached its duty to the student, either by failing to inform his mother about the first incident or by failing to take other available reasonable steps to

discourage or prevent a further incident, and second, that the failure constituted a proximate cause of the second assault. The proximate cause determination entails two separate findings: first, that the chain of causation leading from the breach actually led to the injuries, and, second, that the second assault and resulting injuries were a foreseeable consequence of the breach, rather than an intervening cause of plaintiff's injuries.

The record establishes the following: In 2003, plaintiff Jayvaun Stephenson, then a 13-year-old eighth-grade student, attended Middle School 113 in the Bronx. At around noon on October 22, 2003, between fifth and sixth periods, Stephenson congregated with several friends in the school's first-floor hallway. Lorenzo McDonald, then a seventh-grade student, approached Stephenson from behind and stated that he was going to take a black-and-white handkerchief out of Stephenson's back pocket. Stephenson replied that he could wear whatever he wanted to wear. McDonald pulled Stephenson around and punched him in the nose once. Stephenson reacted by punching McDonald once on each side of his face. Stephenson's friends then restrained Stephenson from further contact with McDonald, and Stephenson went to his next class.

Stephenson was taken to the assistant principal's office during sixth period. After determining that McDonald had initiated the fight, Assistant Principal Reed punished McDonald with several weeks of in-school suspension and Stephenson with one day of in-school suspension; she dismissed Stephenson early and told him to go directly home, staggering Stephenson's and McDonald's dismissal times to ensure that no further confrontation between the two occurred outside of school. However, Reed never contacted Stephenson's mother, Nadra Sinclair, about the fight or the in-school suspension. Nor did Stephenson tell his mother about the incident.

The next day, October 23, 2003, Stephenson served his in-school suspension without incident. While he was leaving the school, he encountered McDonald, who allegedly threatened to "get [him] jumped." The school was unaware of this threat, and Stephenson did not inform his mother of it.

The following morning, October 24, 2003, around 8:00 A.M., Stephenson exited the subway at East 219th Street and saw McDonald on the other side of street. He went into a corner store to purchase breakfast, but three of McDonald's friends pulled him out of the store and brought him outside to McDonald. Two of McDonald's friends held Stephenson's hands behind his back while McDonald and another friend punched Stephenson in the face for five to seven minutes. The assault

occurred two blocks from the school. Following the assault, the attackers let Stephenson go, and an unidentified person brought him to school. After an unsuccessful attempt to contact Stephenson's mother, the school nurse called for an ambulance, which took him to Jacobi Hospital. The assault resulted in a broken mandible bone on both sides of Stephenson's face, which required surgery.

Plaintiffs served a summons and complaint dated April 8, 2004 against the City of New York and the Department of Education, alleging that defendants negligently failed to take steps to prevent a continuation of the assault, in breach of their duty to protect the infant plaintiff when the school stood in loco parentis, resulting in the injuries he suffered on October 24, 2003.

For over four years defendants failed to comply with discovery orders, until finally, on October 30, 2008, they responded with affidavits proclaiming that a document search, which did not take place until August 2008, failed to locate any of the demanded records, statements, witness information, or investigative documentation as to the October 22, 2003 incident, or any records of the school's investigation into the October 24, 2003 incident. A preclusion order resulted, preventing defendants from disputing that they had prior notice of the first assault, the threat to Stephenson, and the assailant's history of violence.

Defendants moved for summary judgment, contending that as a matter of law: (1) with respect to the October 24, 2003 incident, the school had no duty to supervise plaintiff before school and off school premises; (2) Stephenson was not injured as a result of the October 22, 2003 incident; and (3) the negligence (if any) of defendants was not a proximate cause of either incident. Plaintiffs cross-moved for summary judgment on the issue of liability, arguing that the school acted negligently by failing to properly respond to the initial assault, either by notifying the boys' parents or by taking steps to stem the reasonably anticipated escalation of the assailant's violence. The motion court denied defendants' motion and granted plaintiffs' cross motion, holding that "defendant breached a duty it had to plaintiff inside the school, during school hours, by never notifying plaintiff's parent of the October 22nd incident." In addition, the court determined that "[s]ince the defendant was on notice . . . as a matter of law, it was foreseeable that the assailant would continue the assault and even escalate it." Defendants appeal from the denial of their motion for summary judgment and the grant of plaintiffs' cross motion.

There is no dispute that, as previously stated, schools owe a duty to provide adequate supervision to students in their custody and are liable for foreseeable injuries proximately resulting from the absence of adequate supervision (*Brandy B. v Eden Cent. School Dist.*, 15 NY3d 297, 302 [2010], citing *Mirand v City of New York*, 84 NY2d 44, 49 [1994]), which duty is breached if the school, acting in loco parentis fails to act "as a parent of ordinary prudence would . . . in comparable circumstances" (*Hoose*, 281 NY at 58). Of course, "[s]chools are not insurers of safety" (*Mirand*, 84 NY2d at 49, citing *Lawes v Board of Educ. of City of N.Y.*, 16 NY2d 302, 306 [1965]), and cannot be held accountable for others' acts when the students are outside their custody, that is, when the students are off school property during nonschool hours, including on the way to and from school. However, a school may be liable for negligent supervision if a failure to comport with its duty, arising while a student is in its custody, results in foreseeable injuries to the student while he or she is outside its custody.

For example, in *Anglero v New York City Bd. of Educ.* (2 NY3d 784 [2004]), the Court of Appeals held that liability could be found for an assault outside school custody when school employees witnessed and failed to react to an assault upon the same victim earlier that day during school dismissal. The Court made clear that the school breached a duty to supervise if "intervention might have averted the second assault, which occurred off the school grounds" (*id.* at 785). Thus, the fact that plaintiff sustained injuries while outside school custody is not dispositive, if the school could have prevented the second assault by fulfilling its duty to supervise when the plaintiff was in its custody. The essence of plaintiffs' argument here is that defendants breached their duty to supervise by failing to inform Stephenson's mother of the first assault or take appropriate steps to prevent any continuation or escalation. As in *Anglero*, a question of fact exists here as to whether the school failed to take appropriate steps while Stephenson was in its custody, which failure resulted in foreseeable danger of a future assault outside school.

A school's duty to supervise will support liability for an attack by a third party only if the school has actual or constructive notice of the dangerous conduct that caused the plaintiff's injury (*Mirand*, 84 NY2d at 49). That notice is established here. Not only was the first fight between Stephenson and McDonald similar conduct that provided actual notice to the school, but, also, under the motion court's preclusion order defendants may not dispute their notice of the prior conduct. Under *Mirand* (84

NY2d at 50), once a school receives notice of an incident, it must take measures reasonably calculated to prevent further escalation of the incident.

I do not agree with plaintiffs' contention that 8 NYCRR 136.3 imposes on schools a legal obligation to inform parents about assaults on their children while in school custody. This provision requires schools to inform parents about students' existing health conditions; it does not place an affirmative duty on them to inform parents about assaults at the hands of other students. Similarly, plaintiffs' reliance on *Port Washington Teacher's Assn. v Board of Educ. of the Port Washington Union Free School Dist.* (361 F Supp 2d 69 [ED NY 2005]) is misplaced; that case concerned notification of student pregnancy, which is clearly a "health condition."

However, the lack of a specific statutory duty requiring schools to inform parents about acts of violence against students does not preclude a common-law obligation. Schools' undisputed common-law duty, arising because they stand in loco parentis, already requires them to take such affirmative steps as a reasonably prudent parent under similar circumstances would take to protect students in their care (*Hoose*, 281 NY at 58). When a school becomes aware of foreseeable danger while its charges are within its custody, the duty to supervise requires the school "to take energetic steps to intervene" (*Lawes*, 16 NY2d at 305). When the school receives notice that one of its students poses a danger to another student in its custody, the school must take affirmative steps to prevent further escalation of that danger (*Mirand*, 84 NY2d at 50), and is liable for foreseeable injuries proximately related to its failure to intervene regardless of where the injuries occur (*see Anglero*, 2 NY3d at 785). Here, one possible means of intervention was to inform the parents about the initial fight; others included speaking to the assailant or his parents in order to impress upon him the potentially serious consequences of repeating or further escalating the violence, whether inside or outside of school.

Requiring schools to take affirmative steps to inform of foreseeable danger is not unprecedented. In *Ferraro v Board of Educ. of City of N.Y.* (32 Misc 2d 563 [1961], *affd* 14 AD2d 815 [1961]), a student with violent propensities attacked the infant plaintiff under the supervision of a substitute teacher. The school principal knew of the student's violent propensities, but had failed to inform the substitute teacher. The court held that a reasonable jury could find that the principal's failure to inform the substitute teacher about the danger the student posed constituted negligence in breach of the duty to supervise. The court

reasoned that while "the assault itself cannot be the basis for liability of the defendant[,] [i]t is the failure of the principal to have alerted the substitute teacher, thereby depriving her of the opportunity of using her own judgment, which I believe constitutes the act of negligence in this case" (*id.* at 567). The court suggested that "[h]ad [the substitute teacher] been told, she would have been in a position to decide whether anything further was required to be reasonably done to avoid the trouble" (*id.* at 568). Similarly, in this case, the school is not liable for a failure to prevent the first fight or to supervise students on their way to school. However, a reasonable jury could find that the school acted negligently in its response to the initial altercation by, inter alia, failing to inform Stephenson's mother of the danger that McDonald presented to Stephenson outside school.

The present case is distinguishable from *Matter of Kimberly S.M. v Bradford Cent. School* (226 AD2d 85 [1996]), where the Court ruled that despite the teacher's statutory duty to report suspected child abuse, the teacher had no common-law duty to inform parents when their child told the teacher that she had been sexually abused outside school. The Court reasoned that "the reported acts of sexual abuse did not occur while [the child] was in the custody and control of school officials and the threatened harm posed to her by continued acts of a third party did not involve foreseeable conduct that could occur while the child was in the custody and control of school officials" (*id.* at 88). That is, neither the initial harm nor the potential future harm arose within the school's area of responsibility. In the matter now before us, the school had a duty "to take energetic steps to intervene" (*Lawes*, 16 NY2d at 305), because the initial acts of violence against Stephenson occurred while he was in the school's custody.

Other states have imposed on schools a common-law duty to inform parents about foreseeable harm posed to children in the schools' care. For example, in *Phyllis P. v Superior Court* (183 Cal App 3d 1193, 228 Cal Rptr 776 [1986]), a school in California became aware that another student sexually assaulted the plaintiff's daughter a number of times while the students were in the school's custody, but the school chose not to inform the plaintiff about the assaults. The student thereafter raped the plaintiff's daughter on school premises. Had the school warned her about the initial assaults, the plaintiff claimed, she could have prevented the subsequent rape. The court held that the school, acting in loco parentis, owed a duty to the child to supervise, and a duty to the parent to warn of the foreseeable harm. When parents entrust a school with their child, a "special

relationship" between the parent and the school is created. As a result, the school has a duty to warn the parents of threats to their children if the school has knowledge of " 'real and foreseeable' victims of the predictable tragedy" (183 Cal App 3d at 1196, 228 Cal Rptr at 777). The school's knowledge of the initial sexual assaults made the plaintiff's daughter the target of foreseeable harm; therefore, the school had a duty to warn the parent. Although, in California, the school owes a duty to warn to the parent rather than to the student, *Phyllis P.* is instructive on the question of when a duty to inform should arise. As in that case, the school here had knowledge that Stephenson had been the target of a particular type of harm at the hands of a specific individual, and reason to expect further such assaults in the future. Thus, it is reasonable to impose on the school a duty to inform Stephenson's mother about the risks of a future assault on her son.

The question of whether the school breached its duty to supervise in the present case must be addressed by the trier of fact, rather than decided as a matter of law, since it depends on the particular circumstances. The steps a reasonably prudent parent would take under similar circumstances vary based upon the age and maturity of the child in question (*see e.g. Garcia v City of New York*, 222 AD2d 192, 196 [1996], *supra* ["even the most prudent parent will not guard his or her teen at every moment in the absence of some foreseeable danger of which he or she has notice; but a five-year-old child in a public bathroom should be supervised"]). Since determining what constituted reasonable care is a fact-intensive inquiry, whether the school breached its duty to supervise by failing to inform plaintiff's parents or take other appropriate steps is properly a question for the trier of fact (*see Wilson v Vestal Cent. School Dist.*, 34 AD3d 999, 1000 [2006]). "The adequacy of a school's supervision of its students is generally a question left to the trier of fact to resolve" (*id.*).

The majority asserts that the cases imposing a duty only involve a failure to act while the student is in the custody of the school. I agree. However, while schools may not have a duty to protect their students once those students are off the premises, the duty owed by a school *while the plaintiff is still in its custody* includes taking steps to prevent further attacks after the student has left the premises (*see Anglero*, 2 NY3d at 785). It is the question of whether the actions taken by the school satisfied that obligation that must be addressed by a jury. In suggesting that it is unreasonable to impose a further duty on the school to notify a parent about a fight "when the school has al-

ready affirmatively addressed the misconduct," the majority fails to recognize that the school may not have addressed the misconduct adequately.

If it is determined that the school breached its duty to plaintiffs, a question of fact will remain as to whether that negligence was the proximate cause of the harm. While no causation may be established when, as a matter of law, by the manner in which they occurred, the injuries could not have been prevented in any event (*see Walsh v City School Dist. of Albany*, 237 AD2d 811 [1997]), it is not appropriate in these circumstances to hold, *as a matter of law*, that the second assault could not have been prevented. Certainly, McDonald could have launched his second attack at any time, or in any place. The issue here is whether, if Stephenson's mother had been notified, she could have made arrangements to effectively protect her son. She had a number of potentially viable options. She could have accompanied her son to and from school herself, or arranged for another adult to do so. She could have arranged for her son to be accompanied, in the weeks that followed, by others who would have been able to call for help, or perhaps would have intervened in the four-on-one attack that occurred. She also could have sought the intervention of the juvenile authorities, who might have emphasized to the assailant and, importantly, his parents or guardians, that any further incidents could have serious legal repercussions. Indeed, even a mere threat by the mother to contact the juvenile authorities, addressed to the attacker or perhaps to his family, could have prompted the attacker to squelch any plans for further attacks on Stephenson.

As this nonexhaustive list of options illustrates, the mother's claim that she would have prevented the second assault if informed of the first is not merely speculative. Rather, a question of fact is presented as to whether she could have arranged feasible means of preventing the second, more severe assault. The majority's backhanded dismissal of the precautionary steps that Stephenson's mother might have taken is indicative of an unnecessarily defeatist approach to the protection of one's minor children, an option that parents of public school students should not have to accept.

Nor can McDonald's second attack on Stephenson be deemed an intervening cause of his injuries, precluding liability as a matter of law due to its criminal, intentional nature. Although, as a matter of law, schools are not liable when a sudden, *unforeseeable* act of a third party causes injury (*see Ohman v Board of Educ. of City of N.Y.*, 300 NY 306, 309 [1949]), proximate cause becomes a question of fact when the third party

act may be reasonably foreseen (*see Bell v Board of Educ. of City of N.Y.*, 90 NY2d 944 [1997]). "When the intervening, intentional act of another is itself the foreseeable harm that shapes the duty imposed, the defendant who fails to guard against such conduct will not be relieved of liability when that act occurs" (*Kush v City of Buffalo*, 59 NY2d 26, 33 [1983]). A defendant may be liable if "a reasonably prudent person in the defendant's situation, before the [third party's act], would have foreseen that an act of the kind committed by [the third party] would be a probable result of the defendant's negligence" (PJI 2:72). Since the school had notice of McDonald's first assault on Stephenson, a reasonable jury could find that his second assault was reasonably foreseeable from the school's perspective.

"[T]he plaintiff need not establish that the precise manner in which the accident occurred was foreseeable. Rather, it is sufficient that she demonstrate that the risk of some injury from the defendant's conduct was foreseeable" (*Boderick v R.Y. Mgt. Co., Inc.*, 71 AD3d 144, 148 [2009] [citation omitted]). A question of fact exists as to whether it was foreseeable that Stephenson would sustain injuries because of the school's failure to take appropriate measures after the initial altercation.

In view of the questions of fact presented as to whether the school's failure to inform Stephenson's mother or take other steps to prevent further incidents was a breach of its duty to plaintiffs, and whether that failure was a proximate cause of the harm, both parties' motions for summary judgment should have been denied, and the case should proceed to trial.