Alexander J. v State of New York (2024 NY Slip Op 50835(U))

[*1]

Alexander J. v State of New York

2024 NY Slip Op 50835(U)

Decided on June 12, 2024

Court Of Claims

Vargas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 12, 2024
Court of Claims

Alexander J., Claimant,

against
The State of New York, Defendant.

Claim No. 136738 

For Claimant:
Herman Law
By: Cynthia A. Constantino, Esq.
For Defendant:
Hon. Letitia A. James, Attorney General
of the State of New York
By: Philip J. Dillon, Esq., Assistant Attorney General

Javier E. Vargas, J.

Papers Considered:
Notice of Motion, Affirmation & Exhibits Annexed 1-10
Affirmation in Opposition, Memorandum & Exhibits Annexed 11-15
Reply Affirmation 16
Upon the foregoing papers and for the following reasons, the Motion by the Defendant State of New York (hereinafter "State"), for dismissal of the Claim filed by Claimant Alexander J. (hereinafter "claimant"), is denied in accordance with the following decision.
By Claim filed on August 4, 2021, the claimant commenced the instant action against the State under the Child Victims Act, pursuant to CPLR 214-g, alleging that he was sexually assaulted and abused as a child by a staff member/nurse named Ollie Williams, when he was hospitalized at the Manhattan Psychiatric Center (hereinafter "MPC") with "a principal place of business located at 102 Rivers Edge Road, New York, New York 10001[,] . . . under the control, ownership, and [] operated by the State" (Claim at 2, 3, ¶¶ 3, 4, 12). Specifically, the Claim alleges that, from 1977 to 1980 at approximately age 14 to 17 years old, the claimant was sent for inpatient psychiatric treatment to MPC, and shortly thereafter, Mr. Williams sexually abused and [*2]assaulted him "innumerable times over the course of the next three (3) years until [he]" turned 17 years old (id. at 8, 9, ¶¶ 36, 38). The acts of sexual abuse took place at MPC's "holding area (seclusion room),the medication room and in [c]laimant's bedroom," as well as in Williams' apartment away from the premises (id. at 9, ¶¶ 41, 42). Per claimant, he reported the sexual abuse and assaults to "Shirley," a staff member/supervisor at MPC, as well as "Clara," a staff member/supervisor, "and Mr. Gidium, a staff member/teacher," but they failed to act and continued to allow Williams unfettered access to claimant after being given actual notice (id. at 10, ¶¶ 45, 46). Other staff members allegedly observed the claimant entering the medication room with Williams, however, no report or investigation was conducted of the repeated inappropriate behavior (see id. ¶ 47). 
At all times relevant and material herein, the Claim alleges that sexual assault and abuse of juveniles placed in State Hospitals and, specifically, in MPC was a chronic problem well known to mental health officials, the State and its Office of Mental Health officials (hereinafter "OMH") (see id. at ¶ 48). Claimant further alleges that the State was negligent in not implementing policies and procedures to prevent the sexual abuse of patients within its custody and control, in failing to use ordinary and reasonable care to protect his safety, care and well-being, and having actual and/or constructive notice that claimant was being sexually abused and assaulted by Williams, the State failed to protect him from foreseeable harm (see id. at 6-7, 14, ¶¶ 27-32, 71). As a result, claimant alleges that he suffered and continues to suffer severe and permanent psychological, emotional and physical injuries, shame, humiliation and an inability to lead a normal life (see id. at 15, ¶ 73). 
The State filed its Verified Answer on September 8, 2021, denying all allegations of negligence or culpability and asserting eleven affirmative defenses, including that the State is immune from liability as the abusive employee was not acting in furtherance of the State's business and acted outside the scope of his State employment, and that the Claim fails to comply with Court of Claims Act § 11(b) in providing an inadequate description of the location where the incidents occurred.
On February 14, 2022, the parties entered into a Preliminary Conference Stipulation and Order with respect to a discovery schedule, so ordered by then Court of Claims Judge Faviola A. Soto. On August 30, 2022, following the retirement of Judge Soto, all matters and motions currently pending before her were reassigned to the undersigned. Counsel then appeared for subsequent status conferences, where discovery and deposition deadlines were discussed and extended on agreement by the Court and counsel up to and including November 13, 2023, when the Court set a briefing schedule for the instant motion.
By Notice of Motion filed December 27, 2023, the State now moves for summary judgment dismissal of the Claim, pursuant to CPLR 3212 and Court of Claims Act § 11(b), arguing firstly that the Court lacks subject matter jurisdiction over the Claim due to the claimant's misidentification of the "place where" the alleged abuse took place, rendering the Claim jurisdictionally defective and subject to dismissal. Specifically, the States argues that although the Claim asserts that the sexual abuse of the infant claimant occurred at MPC, its witness, Dr. Brian Belfi, testified at his deposition that MPC does not have a children's psychiatric center (see Motion, Exh. D). The State maintains that, as per Dr. Belfi's testimony, while a Children's Hospital existed at Wards Island - where MPC is located - in the past, that [*3]hospital was not located on the MPC campus and children psychiatric centers are usually autonomous from inpatient hospitals (id.). Indeed, the States notes that the claimant testified that MPC was separate from the Manhattan Children's Psychiatric Center and was located in a different building, a block away from each other; he knew this because he attended both facilities (see Motion, Exh. F, at 67). Here in this Claim, the State had to investigate further whether the claimant was at the MPC adult center or at the Children's Hospital when the alleged abuse occurred.
Next, the State argues that it is entitled to a summary judgment dismissal of the Claim, in that at the close of discovery, the vague negligence allegations in the Claim were not supported by any evidence that the State is liable for the alleged assaults. In addressing all possible claims of negligence such as respondeat superior, in loco parentis and negligent hiring, supervision and retention, the State argues that there is no evidence that the State breached its duty of acting in loco parentis in supervising the claimant and it is not liable for the acts of employees outside the scope of their employment. For any allegation of assaults which took place in the private residence of Mr. Williams, the State argues that it was clearly not acting in loco parentis and cannot be liable for those acts, which allegations should be severed and dismissed. With regard to the acts which took place at MPC, the State argues that it is only potentially liable if it knew or should have known of the propensity of Mr. Williams to have abused children residing in the Wards Island facility. The State submits that claimant fails to meet these standards as he claims that he reported the abuse to various staff members after Williams started to abuse him, but not at the relevant time (Motion, Exh. F, at 90 to 95). The State concludes by arguing that the Claim should be dismissed pursuant to the equitable doctrine of laches in that claimant set forth nothing in his Claim or deposition that would explain why he waited 40 years to file his Claim. 
By Affirmation in Opposition filed March 11, 2024, the claimant argues that he did not misidentify the place where the abuse took place and that the Claim is stated with specificity to satisfy the Court of Claims Act § 11(b) in identifying MPC as the place where the abuse occurred. Based on the information provided in the Claim, the claimant argues that MPC housed adults and adolescents on separate floors and was within the Wards Island complex and, in fact, the State does not appear to have had any difficulty locating over 1,000 pages of medical records relating to claimant's care and treatment while at MPC. Claimant explains that Mr. Williams abused him at the Kirby Building which is a MPC building that had a secured lockup unit on the 5th or 6th floor for adolescents who required enhanced security and supervision, referred to as STT, located at "102 Rivers Edge Road" in New York City. Claimant further explains that he was originally housed at the cottages of the Manhattan Children's Psychiatric Hospital at 600 East 125th Street, located across the street from MPC within the Wards Island campus, both overseen by the State's Department of Mental Health (see State's Exh. D, at 13-14). Due to him repeatedly running away, the claimant explains that he was transferred to STT. Comparing the Appellate Division decisions with respect to the "time when" the abuse occurred, claimant emphasizes that in a decades old CVA Claim, exactness is not required and the precise location need not be stated when the location provided in the Claim is alleged with sufficient definiteness for the State to investigate the circumstances of child abuse that occurred over 40 years ago.
As for the negligence cause of action, the claimant argues that there are issues of fact as to whether the State acted as a reasonably prudent parent in loco parentis. To wit, claimant [*4]argues that his deposition testimony supports a finding that the State failed to act as a reasonable prudent parent armed with the same information. Also, the State had actual notice that claimant was being sexually abused when he was 14 to 17 years old between 1977 to 1980 and even following notice, the abuse continued. Attempting to raise triable issues of fact, the claimant argues that he provided actual notice to several STT employees, including Jaques, Shirley Ballard, Kathleen Oitzinger, Rose Giancurto, Jim Johnson and Alex Barnes (see Affirmation in Opposition, Memorandum).
Thereafter, the State filed a Reply Affirmation on March 25, 2024, reiterating its arguments in support of dismissal based on failure to comply with Court of Claims Act § 11(b)'s "place where" requirement, lack of notice to a supervisor with a duty to investigate, and laches. Upon reading the motion papers herein, this Court disagrees with the State.
The Child Victims Act revived the time to commence civil actions based upon certain "conduct which would constitute a sexual offense" committed against children less than 18 years of age under the Penal Law (CPLR 214-g; see Fenton v State of New York, 213 AD3d 737 [2d Dept 2023]; Meyer v State of New York, 213 AD3d 753 [2d Dept 2023]; S.H. v Diocese of Brooklyn, 205 AD3d 180, 185 [2d Dept 2022]). "The rule creates a revival or 'window' period . . . [of] two years and six months for civil actions for which the statute of limitations has already expired" (J.F. v State of New York, 76 Misc 3d 1082 [Ct Cl, 2022]; see CPLR 214-g). In addition to enacting CPLR 214-g, the New York Legislature amended Court of Claims Act § 10 to specify that the time limitations contained therein did not apply to claims brought pursuant to the Child Victims Act (see L 2019, ch 11 § 7 [codifying Court of Claims Act § 10(10)]). Generally, a Child Victim Act negligence action requires '"(1) a duty owed by the defendant to the plaintiff; (2) a breach thereof; and (3) injury proximately resulting thereof"' (J.B. v The Roman Catholic Diocese of Brooklyn, NY, 2022 NY Slip Op 34114[U] [Sup Ct, Love, J., September 21, 2022], quoting Pasternak v Lab. Corp. of Am. Holdings, 27 NY3d 817,825 [2016]).
Pursuant to Court of Claims Act § 11(b), a claim shall set forth, among other things, "the time when and place where such claim arose [and] the nature of same," in order to "enable [the State] to investigate the claim and promptly ascertain the existence and extent of its liability" (Czynski v State of New York, 53 AD3d 881, 882-83 [3d Dept 2008][internal quotations omitted]; see Cobin v State of New York, 234 AD2d 498, 499 [2d Dept 1996], lv dismissed 90 NY2d 925 [1997]). The State is not required to ferret out or assemble information that section 11(b) obligates the claimant to allege (see Lepkowski v State of New York, 1 NY3d 201 [2003]; Morra v State of New York, 107 AD3d 1115 [3d Dept 2013]).
Applying these principles to the matter at bar, the State has not sufficiently established an entitlement to a summary judgment dismissal of the Claim. The record reflects that claimant timely filed his CVA Claim with allegations of sexual abuse committed by a State employee between 1977 to 1980 at MPC located at 102 Rivers Edge Road on Wards Island in New York City. Centric to the State's Motion for summary judgment is that claimant did not correctly plead the place where his abuse occurred, and that it was unlikely that his abuse occurred at MPC — an adult psychiatric facility. On the other hand, it is claimant's contention that from 1978 to 1979, he was at the Wards Island location as an inpatient in the Kirby building, an MPC building that had a special secured STT unit located on the 5th and 6th floor for adolescents who required [*5]enhanced security and supervision.
In fact, the claimant testified at his deposition and in his Affidavit that he was initially at the Manhattan Children's Psychiatric Center on Wards Island in the cottages for inpatient treatment from 1977 to 1978 or 1979 (see claimant's transcript, Exh. F, at 63, 67, 69). After escaping a few times, at around 1978 or 1979, he was taken out of the cottages and transferred to STT, a lockup unit on MPC's 5th Floor, a block away from the Children's Center (see id. at 67, 69). At aged 18, he was hospitalized at MPC for adults proper (id.). When queried, the State's witness, Dr. Belfi, testified that MPC does not currently have an adolescent program, but that it did in the past (see Dr. Belfi's transcript, Exh. D, at 12). Upon further inquiry, he explained that the Children's Center may or may not have been part of MPC, but it was his understanding that the Children's Center was overseen by OMH (see id. at 13, 14). Despite his sparse knowledge of whether the Children's Center was administered through MPC, Dr. Belfi inadvertently confirmed that in the past the children were indeed housed in one of the buildings on MPC's Wards Island (see Dr. Belfi's transcript at 13, 14).
Nothing in either claimant's or Dr. Belfi's testimony disputes the Claim's representation that claimant was hospitalized at MPC at least from 1978 or 1979 to 1980. Note that in CVA cases, it is permissible for a claimant to plead a range of dates, and exact dates of abuse are not required (see Fenton v State of New York, 213 AD3d at 739; Meyer v State of New York, 213 AD3d at 754). Hence, whether claimant's hospitalization and period of alleged abuse actually took place at the Manhattan Children's Psychiatric Center, a facility somewhat unrelated to MPC, is a question of fact to be determined at trial. There is no indication here that a dismissal of the Claim is warranted at this juncture because this Court is hereby finding that claimant sufficiently pled the "place where" requirement of Court of Claims Act § 11(b), allowing the State to investigate the Claim (see R.F. v State of New York, 81 Misc 3d 201 [Ct Cl, 2023]; but see Robin BB v State of New York, 56 AD3d 932 [3d Dept 2008]).
In pleading negligence, the claimant clarifies and acknowledges that he seeks a finding based on whether the State acted as a reasonabl[e] prudent parent in loco parentis (see Affirmation in Opposition at 17). There is no dispute that the State had a duty to exercise the same degree of care toward claimant '"as would a reasonable prudent parent, and [could] be held liable for foreseeable injuries proximately related to the absence of adequate supervision"' (Novak v Sisters of the Heart of Mary, 210 AD3d 1104, 1105 [2d Dept 2022]; see Rydzynski v North Shore Univ. Hosp., 262 AD2d 630 [2d Dept 1999]). Correspondingly, in a school setting, a duty is breached if a school acting in loco parentis fails to act as a parent of ordinary prudence in comparable circumstances (see Stephenson v City of New York, 85 AD3d 523 [1st Dept 2011]). While it is said that a school cannot be held accountable for the action of others when the student is off school property during non-school hours, said school may be held liable for negligent supervision if a failure to comport with its duty, arising while a student in its custody, results in foreseeable injuries to the student while he or she is outside its custody (see Stephenson v City, 85 AD3d at 529). Here, there is still a question of fact as to whether the State adequately supervised the claimant after having assumed the relationship of a lawful parent. With respect to the allegations of abuse, allegedly occurring inside and outside of the hospital, this Court should have an opportunity to listen to the facts, as well as assess claimant's credibility in determining the State's liability, if any.
As for the State's contention that the doctrine of laches bars the instant Claim due to unreasonable and excusable delay, the Court finds that contention to be without merit. It is clear that the Child Victims Act revived the time to commence sexual abuse claims, and that the Legislature intended to create a window to allow such claims to be initiated regardless of its date of occurrence (see CPLR 214-g). Notably, the Child Victims Act recognizes the justifiable delay often associated with coming to terms with and reporting sexual abuse and that such claims are sometimes brought long after the childhood abuse or trauma occurred, as is the instant Claim brought after approximately 43 years (see S.H. v Diocese of Brooklyn, 205 AD3d at 194). Surely, it was not the legislative intent to allow laches to bar these claims. 
Upon review of the record presented, the State has failed to make a prima facie showing of entitlement to judgment as a matter of law, as there are triable issues of fact outstanding (see Jones v State of New York, 222 AD3d 406 [1st Dept 2023]; O'Keeffe v State of New York, 40 AD3d 607 [2d Dept 2007]).
Based on the foregoing, it is ORDERED that the State's Motion for summary judgment (Motion No. M-100288) is denied.
New York, NY
June 12, 2024
Hon. JAVIER E. VARGAS
Judge of the Court of Claims